599 F.2d 707
 20 Fair Empl.Prac.Cas. 457,
20 Empl. Prac. Dec. P 30,136
SOUTHERN METHODIST UNIVERSITY ASSOCIATION OF WOMEN LAW
STUDENTS et al., Plaintiffs-Appellants,
Equal Employment Opportunity Commission, Plaintiff-Intervenor,
v.
WYNNE & JAFFE, Defendants-Appellees.
SOUTHERN METHODIST UNIVERSITY ASSOCIATION OF WOMEN LAW
STUDENTS et al., Plaintiffs-Appellants,
Equal Employment Opportunity Commission, Plaintiff-Intervenor,
v.
THOMPSON, KNIGHT, SIMMONS & BULLION, Defendants-Appellees.
 Nos. 77-2346, 77-2347.
 United States Court of Appeals,
Fifth Circuit.
 July 30, 1979.
 
 Neil H. Cogan, Dallas, Tex., for plaintiffs-appellants in both cases.
 Robert A. Gwinn, Dallas, Tex., for defendants-appellees in 77-2346.
 Beatrice Rosenberg, Gerald D. Letwin, Attys., William H. Ng, EEOC, Appellate Div., Washington, D. C., for other interested parties in both cases.
 Charles Porter Storey, Francis W. Thayer, Dallas, Tex., for defendants-appellees in 77-2347.
 Appeals from the United States District Court for the Northern District of Texas.
 Before AINSWORTH and VANCE, Circuit Judges, and BOOTLE,* District Judge.
 AINSWORTH, Circuit Judge:
 
 
 1
 In these companion Title VII[1] sex discrimination suits, the Southern Methodist University (SMU) Association of Women Law Students (Association) and Lawyers A, B, C and D (A-D), four female lawyers seeking to proceed anonymously, allege that defendants, two Dallas law firms, discriminated against women in hiring summer law clerks and associates and request injunctive relief. Plaintiffs appeal from various pretrial orders of the district court requiring the Association to reveal by proper pleadings the true identities of lawyers A-D and to answer certain defense interrogatories. These interrogatories, among other things, ask the identities of the officers and members of the Association's governing body and request information respecting the Association's relationship to SMU. Defendants contend that the trial court's orders are not appealable, but we conclude that the orders are appealable under the collateral order doctrine and, with the single modification described below, affirm.
 
 I. Procedural Background
 
 2
 On May 5, 1976, the Association filed a complaint, on behalf of itself, its women members and all women situated similarly to its women members, against Wynne & Jaffe, a Dallas law firm.[2] The Association charged that Wynne & Jaffe violated Title VII by discriminating against women in hiring summer law clerks. The law firm answered the complaint on May 26, denying that its summer hiring practices violated the Act. Plaintiff and defendant served interrogatories on each other in July and August. On August 9, the Association filed objections to Wynne & Jaffe's interrogatories and also moved for a protective order. Plaintiff averred that many of defendant law firm's interrogatories sought information privileged from disclosure under the Constitution and Title VII and contended that disclosure would cause "the plaintiff's officers . . . the women members of plaintiff and the women represented by plaintiff embarrassment, annoyance and economic loss";[3] the Association also moved, "(i)f the foregoing objections are not sustained in full," that any information revealed pursuant to Wynne & Jaffe's interrogatories "should be available only in confidence to defendant's attorney."
 
 
 3
 The Equal Employment Opportunity Commission (EEOC) filed a motion for leave to intervene as a party-plaintiff on August 23. Judge Higginbotham issued an order respecting Wynne & Jaffe's interrogatories on October 12, sustaining the Association's objection to four of the interrogatories and requiring it to answer the remaining twenty-nine.[4] The court also ruled that defense counsel "shall not communicate Plaintiff's answers . . . to any person other" than two named partners of Wynne & Jaffe and ordered these lawyers not to "communicate such answers of Plaintiff to any other person, including without limitation, members, associates and employees of the Defendant law firm, except upon further application to and order of this Court."
 
 
 4
 On October 26, the Association brought a separate suit against Thompson, Knight, Simmons & Bullion, another Dallas law firm, alleging similar Title VII violations in the hiring of summer law clerks and associates.[5] Thompson, Knight answered the complaint on December 3, denying the charges, and on December 15 the EEOC filed a motion for leave to intervene as a party plaintiff. On February 23, 1977, while the EEOC's motions to intervene in the two actions were still pending, the cases were transferred from Judge Higginbotham to Judge Woodward. The Association moved for permission to file amended complaints in both actions on March 15, seeking to add as named plaintiffs the following alleged victims of each firm's purported discrimination: Lawyer A and Lawyer B in the Wynne & Jaffe suit and Lawyers A-D in the action against Thompson, Knight. On April 13, these anonymous persons and the Association moved for protective orders in each case, asking the court to limit to defendants' respective counsel pretrial disclosure of "the identities, or information which reasonably discloses the identities" of the anonymous plaintiffs and the members of the Association.[6]
 
 
 5
 Judge Woodward issued an order on May 10 granting the EEOC's motions to intervene in the two actions and the Association's request for leave to amend its complaints by adding A-D as parties plaintiff, "except that the identities of Lawyers A, B, C and D must be disclosed for these complaints and for all further purposes. (Only Lawyers A and B need be named in Wynne & Jaffe)." The trial court reasoned that "(t)he demand of the Association to prevent disclosure of Lawyers A-D is not mandated by the record. This is not a case involving racial strife or labor informants. Present there, but not here, were dangers of physical harm to the protected parties. Here the harm is at the most economic and at the least social. Further, the mechanics of non-disclosure would only further complicate an already complicated set of cases."[7]
 
 
 6
 On May 19, plaintiffs filed a motion requesting the district court to amend its May 10 order "so as to permit an interlocutory appeal therefrom pursuant to 28 U.S.C. § 1292(b)"; the trial judge denied that motion on May 25. Meanwhile, Wynne & Jaffe served plaintiffs with a second set of interrogatories on May 24. Plaintiffs moved for a "protective and restraining order" to strike certain interrogatories on May 27, objecting to defendant's queries with respect to the Association's current membership list and the identities of the women whom plaintiffs alleged were reluctant to join or "labor for the Association in the public eye" and fearful "that, if they are associated with the Association, they will be singled out for discrimination by Defendants and other law firms." In an order entered June 8, Judge Woodward declared that he would grant a defense motion to produce the Association's current membership list "if same is not voluntarily produced by the plaintiffs" and instructed plaintiffs to reply to the other contested interrogatories.
 
 
 7
 II. Appealability of the District Court's Orders
 
 
 8
 Plaintiffs urge us to reverse the trial court's orders compelling disclosure of the identities of A-D and information regarding the Association's membership. They assert that the four anonymous lawyers and the organization's members will "suffer economically and socially should their participation in these actions become generally known." Lawyers A, B and C, in sealed affidavits, express a belief that they would "be eased out" or "assigned less desirable matters" by their current employers and one of the women suggests "that her firm would likely lose business should her identity become known." Plaintiffs further argue that if the identities of A-D and the Association's members are revealed and these persons "find it difficult to practice law," other professionals subjected to illegal discrimination will become reluctant to bring Title VII actions and hesitant to band together "in law and other professional schools to advocate their rights under the civil rights statutes." Plaintiffs' brief on appeal, pp. 25-27.
 
 
 9
 However, before considering the merits of plaintiffs' contentions, we must determine whether the district court's pretrial disclosure orders are appealable, for as Mr. Justice Jackson observed in Cohen v. Beneficial Industrial Loan Corporation, "(a)ppeal gives the upper court a power of review, not one of intervention. So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal." 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). 28 U.S.C. § 1291 empowers the courts of appeal to hear "appeals from all Final decisions of the district courts." (emphasis added) Generally, this means "a decision by the District Court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978), Quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). Section 1291 "disallow(s) appeal from any decision which is tentative, informal or incomplete" and permits no appeal of decisions "where they are but steps towards final judgment in which they will merge." Cohen v. Beneficial Industrial Loan Corporation, supra, 337 U.S. at 546, 69 S.Ct. at 1225. But courts have long given this statute "a practical rather than a technical construction," Id.; See Gillespie v. United States Steel Corporation, 379 U.S. 148, 153, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964); In re Nissan Motor Corporation Antitrust Litigation, 5 Cir., 1977, 552 F.2d 1088, 1095; Diaz v. Southern Drilling Corporation, 5 Cir., 1970, 427 F.2d 1118, while striving to balance "the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." In re 1975-2 Grand Jury Investigation, 5 Cir., 1978, 566 F.2d 1293, 1299; Gillespie v. United States Steel Corporation, supra, 379 U.S. at 153, 85 S.Ct. at 311; Freeman v. Califano, 5 Cir., 1978, 574 F.2d 264, 267.
 
 
 10
 Under the collateral order doctrine announced by the Supreme Court in Cohen, supra, a trial court order is an appealable section 1291 "final decision" when it represents "a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it" and which presents "a serious and unsettled question" of law. 337 U.S. at 546, 69 S.Ct. at 1226. To fall within the Cohen rule, the trial court's orders requiring disclosure of the identities of A-D and the information respecting the Association's membership must fulfill three requirements: (1) they must have fully disposed of the disclosure issues raised by plaintiffs, leaving nothing "open, unfinished or inconclusive"; (2) the orders must not have been mere steps toward a final judgment on the merits and the disclosure issues must be "completely collateral to the cause of action asserted"; and (3) the district court's rulings must affect "important right(s) which would be 'lost, probably irreparably,' if review had to await final judgment; hence, to be effective, appellate review in (this) . . . special, limited setting (must) . . . be immediate." Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 2040, 52 L.Ed.2d 651 (1977); Coopers & Lybrand v. Livesay, supra, 437 U.S. at 468, 98 S.Ct. at 2458 (1978); United States v. Gurney, 5 Cir., 1977, 558 F.2d 1202, 1207; In re Nissan Motor Corporation Antitrust Litigation, supra, 552 F.2d at 1094-95.
 
 
 11
 The district court's pretrial disclosure orders pass the Cohen test of appealability. Since there is no "plain prospect that the trial court may itself alter the challenged ruling(s)," we regard them as finished and conclusive. United States v. Gurney, supra, 558 F.2d at 1207. Also, the questions whether plaintiffs must reveal the Association's membership information and the identities of A-D are plainly "independent and easily separable from the substance" of their allegations that defendants have engaged in illegal sex discrimination. "Ascertaining the propriety of the order(s) will not require examining either the merits of plaintiffs' asserted . . . claims or any possible defenses of the defendants." In re Nissan Motor Corporation Antitrust Litigation, supra, 552 F.2d at 1094, 1095; Abney v. United States, supra, 431 U.S. at 658, 97 S.Ct. at 2040; United States v. Gurney, supra, 558 F.2d at 1207. Moreover, to postpone review until final judgment would risk irremediable injury to the rights that plaintiffs assert. Under the trial court's order, if lawyers A-D wish to preserve anonymity, they must abandon their individual claims and rely on other parties to vindicate their Title VII interests; if they decide instead to continue as individual plaintiffs, the four women must face the purported economic and social hazards of disclosure. Whichever course A-D follow, delayed review could not effectively repair any attendant damage to their rights. Similarly, because the identities of the Association's members, once revealed, could not again be concealed, review following a decision on the merits would come too late to remedy any injury caused by the order to disclose the membership information. Finally, we recognize that plaintiffs' challenge to the trial court's orders raises "serious and unsettled questions of law . . . that this court has not previously addressed," In re Nissan Motor Corporation Antitrust Litigation, supra, 552 F.2d at 1095, particularly in the novel contention that Title VII plaintiffs are entitled to bring suit under fictitious names. Accordingly, we conclude that the district court's pretrial disclosure orders are appealable and therefore advance to the merits of the appeal.
 
 III. Disclosing the Identities of A-D
 
 12
 Plaintiffs have not cited, nor have we found, any prior decisions which recognize or even discuss the right of Title VII plaintiffs to proceed anonymously. Neither the Federal Rules of Civil Procedure nor Title VII itself make provision for anonymous plaintiffs. The rules require that "(i)n the complaint the title of the action shall include the names of all the parties," Fed.R.Civ.P. 10(a), and the language of Title VII establishes no exception to the general principle that "the identity of the parties to a lawsuit should not be concealed." Doe v. Deschamps, D.Montana, 1974, 64 F.R.D. 652, 653.
 
 
 13
 Under certain special circumstances, however, courts have allowed plaintiffs to use fictitious names. "(W)here the issues involved are matters of a sensitive and highly personal nature," such as birth control,[8] abortion,[9] homosexuality[10] or the welfare rights of illegitimate children or abandoned families,[11] the normal practice of disclosing the parties' identities yields "to a policy of protecting privacy in a very private matter." Id. However, the cases affording plaintiffs anonymity all share several characteristics missing here. The plaintiffs in those actions, at the least, divulged personal information of the utmost intimacy; many also had to admit that they either had violated state laws or government regulations or wished to engage in prohibited conduct.[12] Here, by contrast, to prove their case A-D need not reveal facts of a highly personal nature or express a desire to participate in proscribed activities. Furthermore, all of the plaintiffs previously allowed in other cases to proceed anonymously were challenging the constitutional, statutory or regulatory validity of government activity. While such suits involve no injury to the Government's "reputation," the mere filing of a civil action against other private parties may cause damage to their good names and reputation and may also result in economic harm. Defendant law firms stand publicly accused of serious violations of federal law. Basic fairness dictates that those among the defendants' accusers who wish to participate in this suit as individual party plaintiffs must do so under their real names.
 
 
 14
 Plaintiffs argue that disclosure of A-D's identities will leave them vulnerable to retaliation from their current employers, prospective future employers and an organized bar that does "not like lawyers who sue lawyers." In our view, A-D face no greater threat of retaliation than the typical plaintiff alleging Title VII violations, including the other women who, under their real names and not anonymously, have filed sex discrimination suits against large law firms. See, e. g., Kohn v. Royall, Koegel & Wells, S.D.N.Y.1973, 59 F.R.D. 515, Appeal dismissed, 2 Cir., 1974, 496 F.2d 1094.
 
 
 15
 Because we find neither an express congressional grant of the right to proceed anonymously nor a compelling need to "protect( ) privacy in a very private matter," Doe v. Deschamps, supra, 64 F.R.D. at 653, we hold that these Title VII plaintiffs may not sue under fictitious names and therefore affirm the district court's order requiring disclosure of A-D's identities by proper pleadings.
 
 IV. Disclosure of the Membership Information
 
 16
 In his June 8, 1977 order, Judge Woodward stated that he would grant a motion by defendant Wynne & Jaffe to produce the Association's current membership list "if same is not voluntarily produced" and instructed plaintiffs to answer certain questions in Wynne & Jaffe's second set of interrogatories regarding the identities of the women whom plaintiffs claimed were hesitant to join "or labor for the Association in the public eye" and who were afraid " that, if they associated with the Association, they will be singled out for discrimination by Defendants and other law firms." However, the June 8 order does not determine the extent to which Wynne & Jaffe's counsel may disclose the information contained in the membership list and the replies to the interrogatories.
 
 
 17
 Under Judge Higginbotham's order of October 12, 1976, dealing with Wynne & Jaffe's first set of interrogatories, defendant law firm's counsel may "not communicate Plaintiff's answers . . . to any person other" than two named partners of the firm, who in turn are forbidden to divulge plaintiff's responses to any other persons "except upon further application to and order of this Court." We believe that this ruling strikes a sensible balance between Wynne & Jaffe's need to defend this lawsuit and the Association's desire to avoid the purportedly adverse consequences of revealing information with respect to its membership. Therefore, we hold that the disclosure limitations announced in the October 12, 1976 order will also apply to the Association's membership list and plaintiffs' answers to Wynne & Jaffe's second set of interrogatories. With that modification, we affirm the order of the trial court dated June 8, 1977.[13]
 
 
 18
 MODIFIED AND AFFIRMED.
 
 
 
 *
 District Judge of the Middle District of Georgia, sitting by designation
 
 
 [1]
 42 U.S.C. §§ 2000e-2000e-17 (Act)
 
 
 [2]
 The Association filed a sworn charge under the Act with the Equal Employment Opportunity Commission (EEOC) on March 3, 1975, setting forth its allegations against Wynne & Jaffe of illegal sex discrimination. On December 5, 1975, the EEOC found reasonable cause to believe that the Act had been violated in the manner charged and invited the Association and Wynne & Jaffe to enter into conciliation. When the law firm informed plaintiff that it did not desire to enter into conciliation, the Association requested the EEOC to issue a right-to-sue letter against Wynne & Jaffe. The EEOC gave the Association Notice of Right to Sue Within Ninety Days in a letter dated March 23, 1976
 
 
 [3]
 Among other things, the law firm's contested interrogatories sought to ascertain the identities of the officers and members of the Association's governing body; asked whether the Association was sponsored by or operated with the approval of Southern Methodist University; requested the identity of Association members who "had applied for and were refused employment with Defendant because of Defendant's alleged discrimination" and of those members who would have applied but for that purported discrimination; asked the identity of any persons who had requested the Association to file charges against Wynne & Jaffe with the EEOC; and queried whether the governing body or membership of the Association had made the decision to institute charges with the EEOC, along with "full details regarding when and how such decision was made."
 
 
 [4]
 The district court ordered that the Association not be required to answer those interrogatories which asked that it identify any documents in its possession or control which had been sent to the EEOC in connection with the charges made against Wynne & Jaffe and any persons who had requested the Association to bring charges against the law firm with the EEOC (interrogatories numbers 23 and 28); or those seeking "full details" with respect to whether the Association's governing body or membership had made the decision to institute charges with the EEOC (interrogatories numbers 29 and 30)
 
 
 [5]
 The Association filed a sworn charge under the Act with the EEOC on March 3, 1975, detailing its allegations against Thompson, Knight of illegal sex discrimination. On February 14, 1976, the EEOC found reasonable cause to believe that the Act had been violated and invited the Association and Thompson, Knight to enter into conciliation. When the parties failed to reach a conciliation agreement, the Association requested the EEOC to issue a right-to-sue letter against Thompson, Knight. The EEOC gave the Association Notice of Right to Sue Within Ninety Days in a letter dated September 27, 1976
 
 
 [6]
 The motions for protective orders also sought to limit disclosure of information other than that relating to the identities of the anonymous plaintiffs and the Association's members "only to those persons who actually participated in the employment practice to which the information pertains."
 
 
 [7]
 The May 10 order did not address that portion of plaintiffs' April 13 motion for a protective order which sought to limit to defendant's counsel disclosure of the identities of the Association's members. In addition, as we interpret the order it does not require the EEOC to divulge the identities of Lawyers A-D or any other information which would tend to reveal their identities
 
 
 [8]
 Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961)
 
 
 [9]
 E. g., Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Doe v. Mundy, 7 Cir., 1975, 514 F.2d 1179; Doe v. General Hospital of District of Columbia, 1970, 140 U.S.App.D.C. 153, 434 F.2d 427
 
 
 [10]
 E. g., Doe v. Department of Transportation Federal Aviation Administration, 8 Cir., 1969, 412 F.2d 674 (challenge to denial of airman medical certificate on grounds of homosexual activity and prior sodomy conviction); Doe v. Commonwealth's Attorney for City of Richmond, E.D.Va., 1975, 403 F.Supp. 1199 (constitutional challenge to state sodomy statute as applied to consenting homosexual activity); Doe v. Chaffee, N.D.Cal., 1973, 355 F.Supp. 112 (challenge to dishonorable discharge from Navy on ground of homosexual activity)
 
 
 [11]
 E. g., Doe v. Carleson, N.D.Cal., 1973, 356 F.Supp. 753; Doe v. Gillman, N.D.Ia., 1972, 347 F.Supp. 482 (challenges to right of state welfare departments to require cooperation of AFDC recipients in obtaining convictions of spouses for nonsupport); Doe v. Shapiro, D.Ct.1969, 302 F.Supp. 761 (challenge to state welfare department regulation providing for termination of welfare payments to illegitimate children if mother refuses to disclose name of child's father)
 
 
 [12]
 See, e. g., Roe v. Wade, supra; Doe v. Commonwealth's Attorney for City of Richmond, supra; Doe v. Shapiro, supra
 
 
 [13]
 We note that nothing in the June 8 order alters that part of Judge Higginbotham's October 12, 1976 order under which plaintiffs are held not to be required to answer interrogatories respecting any information the Association and its members communicated to the EEOC in connection with the charges against Wynne & Jaffe. See notes 3 and 6 Supra