695 F.2d 1314
 COASTAL PETROLEUM COMPANY, a Florida Corporation, and The
United States Army Corps of Engineers, The State of Florida
Department of Natural Resources and the Board of Trustees of
the Internal Improvement Trust Fund of the State of Florida,
Plaintiffs-Appellees,
v.
U.S.S. AGRI-CHEMICALS, A DIVISION OF UNITED STATES STEEL
CORPORATION, a Delaware Corporation authorized to
do business in Florida, Defendant- Appellant.
COASTAL PETROLEUM COMPANY and The State of Florida
Department of Natural Resources and the Board of
Trustees of the Internal Improvement
Fund of the State of Florida,
Plaintiffs-Appellees,
v.
INTERNATIONAL MINERALS & CHEMICAL CORPORATION, Defendant-Appellant.
COASTAL PETROLEUM COMPANY, a Florida Corporation, Plaintiff-Appellee,
The State of Florida, Department of Natural Resources, etc.,
et al., Involuntary Plaintiffs-Appellees,
v.
W.R. GRACE & COMPANY, Defendant-Appellant.
COASTAL PETROLEUM COMPANY, a Florida Corporation, Plaintiff-Appellee,
The State of Florida, Department of Natural Resources,
Involuntary Plaintiffs,
v.
SWIFT AGRICULTURAL CHEMICALS CORP., a Delaware corporation,
authorized to do business in Florida, now Estech
General Chemicals Corporation,
Defendant-Appellant.
 Nos. 81-6083, 81-6094, 81-6153 and 81-6154.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 17, 1983.
 
 Julian Clarkson, Tallahassee, Fla., for defendants-appellants.
 James R. Hubbard, Miami, Fla., for State of Fla.
 C. Dean Reasoner, Washington, D.C., Robert J. Angerer, William J. Peebles, Joseph C. Jacobs, Tallahassee, Fla., for Coastal.
 Appeals from the United States District Court for the Northern District of Florida.
 Before HILL and HENDERSON, Circuit Judges, and GARZA,* Senior Circuit Judge.
 JAMES C. HILL, Circuit Judge:
 
 
 1
 This is a consolidated appeal of four cases. Defendants are appealing the propriety of an injunction issued by the district court, and that court's conclusion that subject matter jurisdiction existed. For the reasons stated below we reverse.
 
 HISTORY
 
 2
 The basis of this case is a title dispute involving a complex procedural history which we will only briefly summarize. In 1976, Mobil Oil Corporation [hereinafter Mobil] filed suit in a Florida State Court seeking a declaration of its rights under an oil exploration agreement it had with Coastal Petroleum Company [hereinafter Coastal]. Coastal filed several counterclaims including one alleging Mobil's conversion of phosphate ore from certain rivers in Florida. Coastal, was joined in its counterclaim, by the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida and the Department of Natural Resources[1] [hereinafter collectively referred to as Trustees].
 
 
 3
 Mobil filed a reply counterclaim seeking a declaration of the parties' rights based upon an 1862 deed granted by the Trustees to Mobil's predecessor in interest which raised the issue of the navigability of certain waters in Florida that were in dispute. Based upon Mobil's counterclaim, Coastal and the Trustees removed the action to federal court asserting federal question jurisdiction. Coastal's and the Trustees' allegation of federal question jurisdiction is based upon the contention that Mobil's reply counterclaim raised the issue of whether the Peace River was a navigable body of water. Their position derives from the State's acquisition of Peace River and the lands beneath it back in 1845 when Florida was admitted to the Union. If, at the time of the statehood, the Peace River was navigable, then the lands passed from the United States to Florida as sovereign lands under the equal footing doctrine.[2] If the state received these lands as sovereign lands, then, according to Coastal and the Trustees, the 1862 deed leasing these lands to Mobil's predecessors in interest was invalid. Whether the Peace River was navigable on the date Florida was admitted to the union, according to Coastal and the Trustees, presents a substantial federal question. The appellees argue that the passing of title is a federally created right which should be governed by federal law.
 
 
 4
 Mobil, however, contends that the Peace River was not navigable at the time of statehood, and therefore, the lands did not pass to Florida as sovereignty lands. Mobil suggests that Florida received the lands in 1850 under the Swamp and Overflow Lands Grant Act, 9 Stat. 520, codified at 43 U.S.C. Sec. 982 (1976). Accordingly, Mobil maintains that its reply counterclaim does not raise the issue of the navigability of the Peace River, but rather a typical title dispute between Florida land claimants, each of whom derived its claim from the State. Because this is only a title dispute concerning Florida law, there should be no federal question jurisdiction.
 
 
 5
 Prior to any determination by the district court as to the viability of Coastal's and the Trustees' claim of federal question jurisdiction, Coastal filed suits, similar to its conversion suit against Mobil, against five other mining companies four of which were based on both federal question[3] and diversity of citizenship[4] jurisdiction. The five mining companies were: American Cyanamid Company, USS Agri-Chemicals, Estech General Chemical Corporation, International Minerals and Chemical Corporation and W.R. Grace and Company.
 
 
 6
 Coastal's new contention of diversity of citizenship was based on its belief that the Trustees, although an agency of the State, were sufficiently independent from the state as to qualify them as a citizen. If the Trustees are a citizen of the state of Florida, then complete diversity exists entitling them to subject matter jurisdiction in the federal court. Subsequent to Coastal's initiation of the suits in federal court, four of the six mining companies initiated quiet title actions in the Florida state court system. Coastal then sought and obtained an injunction issued from the district court which extended to all six mining companies, enjoining all parties from instituting any lawsuit, in state or federal court, involving any of the issues to be considered in the conversion suits. Mobil and American Cyanamid Company appealed the issuing of the injunction to the Eleventh Circuit and both companies have succeeded in dissolving the injunction as it pertains to them.[5]
 
 
 7
 The remaining four defendants are challenging the propriety of the same injunction issued by the district court and are appealing that court's conclusion of the existence of subject matter jurisdiction.
 
 FEDERAL QUESTION JURISDICTION
 
 8
 The district court's order concluding that federal question jurisdiction existed was issued prior to this court's opinion in Mobil Oil Corporation v. Coastal Petroleum Company, 671 F.2d 419 (11th Cir.1982). In Mobil, where the identical title disputes were raised, this court concluded that the "question of title to land which depended upon whether state land was subject to restrictions on alienation did not present a federal question merely because the issue of whether the river was navigable was involved ...." Id. at 424.
 
 
 9
 Because we have concluded that federal question jurisdiction did not exist in Mobil, we also conclude that there is no federal question presented as against the remaining four mining companies. Although Coastal attempts to assert other reasons upon which federal question jurisdiction exists, we find the arguments without merit.
 
 DIVERSITY JURISDICTION
 
 10
 For purposes of diversity jurisdiction a state is not a citizen of any state. Postal Telegraph Cable Co. v. Alabama, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231 (1894); see C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure: Jurisdiction Sec. 3602 n. 13 (1975). Whether the Trustees are considered a "State" for purposes of diversity, or whether they qualify as a separate and independent agency is the threshold question. If the Trustees are considered part of the State so that they are not a "citizen" within the meaning of Sec. 1332, then complete diversity would not exist. See Strawbridge v. Curtis, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).
 
 
 11
 This court, in Aerojet-General Corporation v. Askew, 453 F.2d 819 (5th Cir.1971), resolved the question of whether the Trustees qualify as being sufficiently independent to be considered a "citizen" for purposes of diversity jurisdiction. In Aerojet, suit for specific performance was brought against the Trustees and the Florida State Board of Education. The court, after examining Florida law, and in determining whether the Board could rely on the eleventh amendment state immunity doctrine, concluded that "this suit does not constitute an action against the State of Florida and is, therefore, not barred by the eleventh amendment to the United States Constitution, as to either of the two state boards in question." Id. at 830, see Farrugia v. Askew, 371 F.Supp. 736 (N.D.Florida 1973). Although the determination made by the court in Aerojet concerned eleventh amendment immunity, we conclude that the analysis for determining the Board's status as a "citizen" for the purposes of diversity is the same. The court in Aerojet relied heavily on the fact that the appropriate Florida statutes had vested title to the land in question with the Trustees. Similarly, in the instant case, title of the land in dispute has been vested with the Trustees.[6]
 
 
 12
 The district court used a multi-factor analysis in holding that the Trustees are sufficiently separate and independent from the state so as to confer "citizen" status upon them. These factors have been approved by this circuit and are as follows: (1) whether the agency can be sued in its own name; (2) whether the agency can implead and be impleaded in any competent court; (3) whether the agency can contract in its own name; (4) whether the agency can acquire, hold title to, and dispose of property in its own name; and (5) whether the agency can be considered a "body corporate" having the rights, powers and immunities incident to corporations. See C.H. Leavall and Co. v. Board of Commissions of Port of New Orleans, 424 F.2d 764 (5th Cir.1970); Central Stikstof Verkoopkantor, N.V. v. Alabama State Docks Department, 415 F.2d 452 (5th Cir.1969). Because the state has vested title of the land in the Trustees and because the Trustees have acted and continue to act as a separate and distinct entity from the state, we hold that the trustees are a citizen within the meaning of diversity jurisdiction under 28 U.S.C. Sec. 1332 (1976).
 
 THE INJUNCTION
 
 13
 Having established that jurisdiction exists, we turn to the merits of this case, the issuance of an injunction. Under the anti-injunction statute: "A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by an Act of Congress, or where necessary in aid of its jurisdictions, or to protect or effectuate its judgments." 28 U.S.C. Sec. 2283 (1976). The district in granting the injunction stated:
 
 
 14
 At this stage of the litigation ... it would be imprudent to have the same issues litigated in state courts; the issue should be tried one time by one court in order to save both time and expense and avoid duplicitous litigation. No party should be allowed to circumvent this court's rulings by filing quiet title actions in state court. The court determines that an injunction is necessary in aid of its jurisdiction.
 
 
 15
 The anti-injunction statute has been interpreted very narrowly by the Supreme Court.[7] According to the Fifth Circuit, the phrase "where necessary in aid of its jurisdiction" "should be interpreted narrowly, in the direction of federal non-interference with orderly state proceedings." T. Smith and Sons, Inc. v. Williams, 275 F.2d 397, 407 (5th Cir.1960). This court has clearly stated that an "action may be proved simultaneously in state and federal court and the federal court cannot enjoin the state even if the federal suit was filed first." Carter v. Ogden Corp., 524 F.2d 74, 76 (5th Cir.1975).
 
 
 16
 The district court, in issuing the injunction had concluded that federal question jurisdiction existed. Based upon this conclusion, the court desired not to have the same issues litigated both in state and federal court particularly when there was a substantial federal question being raised. We have now concluded that there is no federal question. This case now comes into the federal court based solely upon diversity of citizenship. We, therefore, reverse the district court's issuing of the injunction.
 
 
 17
 The issues now remaining in the Coastal suit involve questions dependent entirely upon state law. Under the Erie doctrine, when a federal court is adjudicating rights created by the state, based solely on diversity of citizenship, the federal court, in effect, becomes just another state court for the purposes of determining the outcome of the case.[8] Accordingly, the district court, in this instance, would now be compelled to apply state law in the same manner as the state court. Therefore, there is no longer any compelling need for federal jurisdiction and no compelling need for the court to issue an injunction to protect its jurisdiction. Whether the injunction would have been proper assuming federal question jurisdiction existed is not an issue presently before this court and therefore, we do not reach the merits of this question.
 
 
 18
 Coastal and the trustees contend that the district court also issued the injunction to effect or protect its judgment. The appellees argue that there was a final judgment in this case in need of protection. Their contention is based on the district court's order of January 10, 1979. This order resulted from the appellant's request that an early ruling on special legal issues be granted by the court. Appellants put forth several defenses which they asserted would resolve many of the issues, citing Odom v. Deltona Corp., 341 So.2d 977 (Fla.1977) as precedent. The court reviewed the briefs submitted by all parties and concluded that several of the defenses raised by the appellants were without merit. The court ordered its ruling pertaining to these defenses to govern the rest of the litigation.
 
 
 19
 This order is simply a non-appealable interlocutory order. To fit into the "protect and effectuate judgment" exception, the order must be a final judgment. See International Association of Mechanics and Aerospace Workers v. Nix, 512 F.2d 125, 129-33 (5th Cir.1975). The word "judgment" is defined as "any order from which an appeal lies." Federal Rule Civil Procedure 54. According to Southern Methodist University Association v. Wynne and Jaffe, 599 F.2d 707 (5th Cir.1979),
 
 
 20
 28 U.S.C. Sec. 1291 empowers the courts of appeal to hear "appeals from all final decisions of the district courts." Generally, this means "all decision by the District Court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " Southern Methodist, 599 F.2d at 711 citing Coopers and Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945).
 
 
 21
 An early order given prior to trial, eliminating certain defenses, does not constitute a final judgment within the meaning of Sec. 2283. This order has not eliminated the need for a trial on the merits nor has it resolved many of the remaining factual and legal questions.
 
 
 22
 Because we find that the issuing of the injunction does not fall within any of the recognized exceptions to the Anti-Injunction statute, we conclude the district court abused its discretion and we reverse, dissolving the injunction.
 
 
 23
 REVERSED.
 
 
 
 *
 Honorable Reynaldo G. Garza, U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 The Board of Trustees was merged into the Department of Natural Resources in 1975 by Florida Statute, chapter 75-22. Since then the legislature has made it clear that the Trustees are still a viable independent agency, holding title to certain lands and having the authority to control those lands. Laws of Florida Ch. 79-255 Sec. 1 (1979). It is clear from the legislative history that the merger took nothing away from this agency and was undoubtedly effectuated for administrative convenience
 
 
 [2]
 The equal footing doctrine states: "the new States ... have the same rights, sovereignty and jurisdiction ... as the original States possess within their respective borders." Mumford v. Wardwell, 6 Wall. (73 U.S.) 423, 18 L.Ed. 756 (1867). According to Pollard's Lessee v. Hagan, 3 How. (44 U.S.) 212, 11 L.Ed. 565 (1845), under the equal footing doctrine, upon admission to the Union, new States acquire title to the lands underlying navigable waters within their boundaries
 
 
 [3]
 28 U.S.C. Sec. 1331(a) (1976) provides:
 "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."
 
 
 [4]
 28 U.S.C. Sec. 1332(a) (1976) provides in pertinent part:
 "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between--(1) citizens of different states ...."
 
 
 [5]
 Mobil Oil Corp. v. Coastal Petroleum, 671 F.2d 419 (11th Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 300, 74 L.Ed.2d 281 (1982); Coastal Petroleum v. American Cyanamid Co., 673 F.2d 1343 (11th Cir.1982)
 
 
 [6]
 Florida Stat. Sec. 253.12(1) states: "Except submerged lands heretofore conveyed by deed or statute, the title to all sovereignty tidal and submerged bottom lands ... and all submerged lands owned by the state ... is vested in the Board of Trustees of the Internal Improvement Fund."
 
 
 [7]
 See Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970)
 
 
 [8]
 See Guaranty Trust Co. v. York, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1944); see also C. Wright, Federal Courts Sec. 55 256 (3d ed. 1976)