[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10664

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 1, 2011
JOHN LEY
CLERK

D. C. Docket No. 5:08-cv-00079-RS-AK

PLAINTIFF B,

Plaintiff-Appellant,

FLORIDA FREEDOM NEWSPAPERS, INC.,

Intervenor-Appellee,

PLAINTIFF J, PLAINTIFF S, PLAINTIFF V,

Plaintiffs-Appellants,

versus

JOSEPH R. FRANCIS, MRA HOLDINGS LLC,
MANTRA FILMS INC., AERO FALCONS, LLC,

Defendants-Appellees.

_____

NATIONAL CRIME VICTIM LAW INSTITUTE, SOUTHERN NEWSPAPER
PUBLISHER'S ASSOCIATION,

Amicus Curiae

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(February 1, 2011)

Before DUBINA, Chief Judge, ANDERSON, Circuit Judge, and MOODY,[*] District
Judge.

DUBINA, Chief Judge:

Anonymous Plaintiffs-Appellants J, S, B, and V sued Joseph R. Francis and

Mantra Films, Inc., MRA Holdings, LLC, and Aero Falcons, LLC—companies

owned or controlled by Francis—for damages stemming from films the

Defendants produced in which the Plaintiffs, while under the age of eighteen,

exposed their breasts and engaged in sexually explicit acts. The Plaintiffs filed a

motion to maintain their anonymity at trial. Intervenor-Appellee Florida Freedom

Newspapers, Inc. argued in favor of denying the motion, and the Defendants

joined the Intervenor's arguments both in the district court and on appeal. The

district court denied the motion, but stayed the judgment while the Plaintiffs

appealed. For the reasons stated below, we vacate the district court's order.

_____

[*]Honorable James S. Moody, Jr., United States District Judge for the Middle District of
Florida, sitting by designation.

# I.

The Plaintiffs in this action are all women who were under the age of eighteen when the relevant events alleged in the Complaint took place. Joseph Francis is the creator and effective controlling officer of companies—including the three other named defendants in this case—that maintain the "Girls Gone Wild" franchise. Francis has made millions of dollars by going to places crowded with young, enthusiastic, and often-intoxicated women and filming them exposing their breasts, fondling each other, kissing each other, and sometimes engaging in more explicit sexual acts. Francis and his agents typically have the filmed women sign a release form affirming that they are over the age of eighteen and that the Girls Gone Wild franchise can use the footage. He and his companies then edit the films to create short scenes of women in various stages of undress and engaged in different types of sexual activities. Francis and his companies bunch the scenes together on pornographic DVDs that they sell online and through advertisements on television.

The allegations in the Complaint stem from the Defendants' actions in Panama City Beach, Florida, during the springs of 2000, 2002, and 2003. In March of 2000, sisters Plaintiff J, age 13, and Plaintiff S, age 15, were riding in a car along "the strip" in Panama City Beach—a stretch of road near the beach

where students on spring break trips often hang out—with a friend and their older sister. At one point, traffic caused them to stop in the middle of the street. Plaintiffs J and S claim that while they were stopped, a man with a video camera approached the car and began encouraging them to remove their tops so he could film them "flashing" their breasts. After a period of such encouragement, Plaintiffs J and S and their female friend briefly removed their tops and flashed their breasts for the camera. The footage of their exhibition ended up in two of the Girls Gone Wild videos, which the Defendants sold as part of their business.[1] They joined this suit for damages caused by the distribution and sale of the footage.

In March of 2002, seventeen-year-old Plaintiff B traveled from Charlotte, North Carolina, to Panama City, Florida, for a spring break trip. On March 31, she and some friends went out to a party where they met some contractors or employees working on behalf of the Girls Gone Wild franchise. The Girls Gone Wild agents invited Plaintiff B and her friends up to a hotel room to continue the

---

[1] In September of 2006, Mantra Films, Inc. pled guilty to ten counts of violating 18 U.S.C. § 2257(f) for producing and selling depictions of sexually explicit conduct without keeping proper age and identification records of the performers and failing to affix a statement stating where the records may be found. [R. 414-7 (Exhibit N) at 25-40.] The Plea Agreement names several Girls Gone Wild videos which served as the basis for the charges and which Mantra Films agreed to no longer sell. [*Id.* Appendix B at 39-40.] Although the Plea Agreement does not mention Plaintiffs J and S, the films containing the footage of them are on the list.

party. Plaintiff B alleges that the agents offered her alcoholic drinks—which she claims may have included drugs—and that the drugs and alcohol impaired her judgment and made her susceptible to coercion. She apparently signed a release form falsely stating that she was eighteen and wrote down a false birth date. At some point that evening, employees or contractors working for the Defendants filmed Plaintiff B and a female friend naked and engaging in explicit sexual acts, including manual and oral sex. The Defendants included the footage on two Girls Gone Wild videos that they marketed and sold to the public.[2] Plaintiff B joined this suit seeking damages for the use of the footage.

In March of 2003, sixteen-year-old Plaintiff V, who lived in the Panama City area, went along with some friends down Front Beach Road in Panama City Beach. The Girls Gone Wild crew was there again, encouraging women to flash their breasts for the camera in exchange for beads, shirts, and similar trinkets. Plaintiff V and her companions first met some Girls Gone Wild employees near a local gas station. One of the employees persuaded two of Plaintiff V's friends to come back with him to a hotel room the company had rented, where Girls Gone

---

[2] In September of 2006, Joseph Francis signed a Plea Agreement where he pled guilty to two counts of violating 18 U.S.C. § 2257 for failing to keep age and identification records for films depicting sexually explicit conduct. [R. 414-7 (Exhibit M) at 2-25.] Francis's Plea Agreement specifically refers to the use of the footage of Plaintiff B as the factual basis for the charges and the guilty plea. [*Id.* at 6.] Mantra Films's September 2006 Plea Agreement also refers to Plaintiff B's footage as the basis for the company's guilty plea. [R. 414-7 (Exhibit N) at Appendix A, p. 36.]

Wild employees would film the two girls undressed in the shower in exchange for $100. The girls agreed; Plaintiff V went along with them to the hotel.

Plaintiff V alleges that Joe Francis arrived at the hotel room while her friends were still being filmed in the shower. He introduced himself to Plaintiff V and her two friends who were waiting. Plaintiff V alleges that a few minutes later, Francis physically and verbally coerced Plaintiff V and one of her friends to go into a bedroom, where he forced them to put their hands on his genitals and stimulate him. Plaintiff V alleges that Francis gave her $100 to split with her friend as payment for their sexual encounter with him.[3] She joined this suit for damages stemming from this sexual assault.

The Plaintiffs filed this action in the District Court for the Northern District of Florida on March 20, 2008. They listed only pseudonyms in their Complaint and quickly moved to remain anonymous in the case; the district court granted the motion in an order issued on December 18, 2008. The court expressly noted that it would revisit the issue before trial.

One year later, on December 18, 2009, the Plaintiffs filed a motion and brief to preserve their anonymity throughout the course of the trial. Anticipating the

---

[3] In March of 2008, Francis pled no contest to one count of child abuse and two counts of prostitution in Florida state court as a result of his encounter with Plaintiff V and her friend. [R. 414-8 (Exhibit O) at 2-3.]

6

motion, Intervenor-Appellee Florida Freedom Newspapers, Inc. successfully petitioned the court for leave to intervene.

During a teleconference on or around January 19, 2010, the district court notified the parties of its intention to deny the Plaintiffs' motion to remain anonymous at trial. The court invited the Plaintiffs to provide supplemental briefing on the issue. In response, the Plaintiffs filed a supplemental memorandum in support of their motion in which they emphasized that they faced the very real danger of becoming internet sensations permanently identified with the videos in which they appeared. The Plaintiffs clarified that they were not seeking a total ban on the presence of the media in the courtroom. They indicated that press members could attend the trial and report on the case, but could not report any specific information learned in the course of the trial that would reveal the Plaintiffs' identities.

The district court nonetheless formally denied the Plaintiffs' motion to remain anonymous at trial in an order issued on February 5, 2010. In its order, the district court observed that there are both practical and constitutional reasons to keep judicial proceedings open to the public. Weighing the risk that requiring the Plaintiffs to proceed with their suit without anonymity would require them to disclose "information of the utmost intimacy" against the presumption of

7

openness, the district court found the Plaintiffs' case wanting. According to the district court, Plaintiffs S and J's claims stemmed from an incident that lasted "less than a minute" and did not involve "sexual conduct as a matter of law." [R. 419 at 5-6.] The district court conceded that Plaintiffs B and V would have to disclose information that "may be embarrassing," but concluded that "casual and voluntary sexual activity is not the type of fundamentally personal issue that warrants the imposition of anonymity like abortion, birth control, or religion." [*Id.*]

The district court bolstered its ruling that none of the Plaintiffs showed they would be forced to disclose "information of the utmost intimacy" by looking at the harms they alleged they would suffer from revealing their identities. The district court found that because the Plaintiffs were no longer minors and the events alleged in the Complaint occurred more than seven years ago, the fact that they were minors at the time was not to be given much weight. [*Id.* at 7.] Further, the expert testimony the Plaintiffs presented about the mental and reputational harm they would suffer from having their identities disclosed was "conclusory" and did not provide sufficient evidence of a harm that would outweigh the presumption of openness in court. [*Id.* at 8.] Finally, the district court held that the Plaintiffs' claims that they would suffer violence and retaliation for filing the suit were not of a sufficient degree to warrant anonymity. [*Id.*] In light of all this, the district court

held that the Plaintiffs did not overcome the presumption of openness in court and denied their motion to remain anonymous.

**II**.

A district court's order denying anonymity for a party is a final appealable order under the collateral order doctrine. *Doe v. Stegall*, 653 F.2d 180, 183 (5th Cir. Unit A Aug. 1981).[4] Thus we have appellate jurisdiction under 28 U.S.C. § 1291 (2010).

This court applies the abuse-of-discretion standard in reviewing a district court's order denying a party's motion to proceed anonymously. *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (citing *Lindsey v. Dayton-Hudson Corp.,* 592 F.2d 1118, 1125 (10th Cir.), *cert. denied,* 444 U.S. 856, 100 S. Ct. 116 (1979)). However, "if the trial court's ruling is based upon an error in law it is freely reviewable on appeal." *Stegall*, 653 F.2d at 184. A district court abuses its discretion in denying a motion to remain anonymous if it fails to actually consider the circumstances of the case and to weigh the relevant factors and instead follows a blanket rule in making its final decision. *See James v. Jacobson*, 6 F.3d 233, 239-43 (4th Cir. 1993) (holding that the district court abused its discretion in

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as precedent all rulings of the former Fifth Circuit handed down prior to October 1, 1981.

denying motion to remain anonymous during trial when it ruled based "on the basis of general disapproval of party anonymity at trial").

**III**.

In deciding whether to grant the Plaintiffs' motion to remain anonymous at trial, the district court used a multi-factor balancing test established through our case law. Because the district court incorrectly deemed some of the Plaintiffs' conduct "casual and voluntary" and it improperly discounted expert evidence of the harm that revealing their identities would cause the Plaintiffs, we conclude that it abused its discretion. We vacate its order in its entirety and direct the district court on remand to enter an order allowing Plaintiffs B and V to remain anonymous, subject to the district court's consideration of whether the restrictions sought would be an unconstitutional prior restraint on protected speech. We also remand Plaintiffs J and S's request to maintain anonymity for reconsideration in light of the issues addressed in this opinion, also subject to the limitations posed by the First Amendment on prior restraints on speech.

Federal Rule of Civil Procedure 10(a) requires that "every pleading" in federal court "must name all the parties." FED. R. CIV. P. 10(a) (2010). "This rule serves more than administrative convenience. It protects the public's legitimate interest in knowing all of the facts involved, including the identities of the

10

parties." *Frank*, 951 F.2d at 322 (citing *Doe v. Rostker*, 89 F.R.D. 158, 160 (N.D. Cal. 1981) and *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mont. 1974)). This creates a strong presumption in favor of parties' proceeding in their own names. Defendants have the right to know who their accusers are, as they may be subject to embarrassment or fundamental unfairness if they do not. *See Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005) ("[The plaintiff] has denied [the defendant] the shelter of anonymity—yet it is [the defendant], and not the plaintiff, who faces disgrace if the complaint's allegations can be substantiated. And if the complaint's allegations are false, then anonymity provides a shield behind which defamatory charges may be launched without shame or liability.").

Nonetheless, the rule is not absolute. A party may proceed anonymously in a civil suit in federal court by showing that he "has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.' " *Frank*, 951 F.2d at 323 (quoting *Stegall*, 653 F.2d at 186). In evaluating whether a plaintiff has shown that he has such a right, the court "should carefully review *all* the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Id.* (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979)

11

[hereinafter, *SMU*]).

The first step in analyzing a plaintiff's claim of a substantial privacy right is to look at the three factors analyzed in *SMU*. *See Stegall*, 653 F.2d at 185 (restating the test). First, are the plaintiffs seeking anonymity challenging governmental activity? Second, will they be required to disclose information of the utmost intimacy? Third, will the plaintiffs be compelled to admit their intention to engage in illegal conduct and thus risk criminal prosecution?

The only relevant consideration of the three-part *SMU* test here is the second question: would denying the plaintiffs anonymity at trial require them to disclose information of utmost intimacy? The "information of utmost intimacy" standard applies to cases involving issues such as abortion, *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001), and prayer and personal religious beliefs, *Stegall*, 653 F.2d at 186. On the other hand, courts have often denied the protection of anonymity in cases where plaintiffs allege sexual assault, even when revealing the plaintiff's identity may cause her to "suffer some personal embarrassment." *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992); *see, e.g.*, *Doe v. Del Rio*, 241 F.R.D. 154, 159-62 (S.D.N.Y. 2006) (holding that plaintiffs alleging sexual abuse by police officer could not proceed anonymously); *Doe v. Shakur*, 164 F.R.D. 359, 360-62 (S.D.N.Y. 1996) (denying motion by

plaintiff suing hip-hop artist for brutal sexual assault requesting to remain anonymous).

After the *Stegall* court clarified that the three-part *SMU* test was only the first step for evaluating whether to let a plaintiff proceed to trial anonymously, courts have considered other contexts in analyzing all the circumstances of a given case. Courts have looked at factors such as whether the plaintiffs were minors, *Stegall*, 653 F.2d at 186, whether they were threatened with violence or physical harm by proceeding in their own names, *id.*, and whether their anonymity posed a unique threat of fundamental unfairness to the defendant. *See SMU*, 599 F.2d at 713.

Here, we conclude from the record that the district court abused its discretion by "fail[ing], in attempting to exercise [its] discretion, adequately to take into account judicially recognized factors constraining its exercise." *James v. Jacobson*, 6 F.3d 233, 239-43 (4th Cir. 1993); *see also Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19, 103 S. Ct. 927, 938-39 (1983) ("[A district court's] discretion must be exercised under the relevant standard prescribed by this court."). The district court failed to take into account the actual allegations made by the Plaintiffs—as evident in its mischaracterization of the Plaintiffs' conduct as "casual and voluntary"—and failed to adequately consider

the Plaintiffs' extensive evidence about the scope of harm they faced if they were forced to reveal their identities.

First, the district court gave inadequate consideration to the degree of intimacy the Plaintiffs' testimony would reach. As the Fifth Circuit noted in *SMU*, " 'Where the issues involved are matters of a sensitive and highly personal nature' . . . the normal practice of disclosing the parties' identities 'yields to a policy of protecting privacy in a very private matter.' " 599 F.2d at 712-13 (quoting *Deschamps*, 64 F.R.D. at 653). The issues involved in this case could not be of a more sensitive and highly personal nature—they involve descriptions of the Plaintiffs in various stages of nudity and engaged in explicit sexual conduct while they were minors who were coerced by the Defendants into those activities.

Plaintiffs J and S alleged that they were filmed displaying their breasts and that this footage was used by the Defendants in films marketed as pornography. Although the district court may ultimately be correct that J and S are not entitled to proceed anonymously, we believe the district court was mistaken in considering Plaintiffs J and S's allegations by assuming that because this sort of activity was not "sexual conduct" under Florida Statutes § 827.071, it was not a disclosure of "utmost intimacy." [R. 419 at 5-6 (citing Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, R. 400).] This reasoning clearly

fails to take into account the individual facts of the case. Nothing about the specific definition of "sexual conduct" under Florida state law makes this definition determinative of whether conduct can touch on matters of "the utmost intimacy." Instead, the district court should consider whether Plaintiffs S and J can remain anonymous in light of the fact that the footage of them was marketed as sexual in nature. Even if their conduct does not fall under the typical classification of "sexual," the district court should consider whether it requires disclosing information of "utmost intimacy" in light of their ages at the time of the filming.

As for Plaintiffs B and V, we conclude from the record that the district court abused its discretion by mischaracterizing their conduct as being "casual and voluntary." Plaintiff B alleges in the Complaint that her filmed behavior was the possible result of being drugged by the defendants—a fact that makes her conduct decisively not "voluntary." [R. 7 at 11, ¶ 61.] In any case, the extremely graphic sexual activity she engages in with the other female in the footage can by no means be deemed "casual." Her filmed conduct includes a lengthy and explicit session of homosexual intimacy involving fondling and oral and manual sex with another underage woman. Requiring her to be identified by name closely connects her graphic homosexual conduct with her widespread public reputation and thus

15

constitutes a matter of "the utmost intimacy." *See Doe v. Commonwealth's Attorney for Richmond,* 403 F. Supp. 1199 (allowing plaintiffs challenging state's anti-sodomy laws as unconstitutional to proceed anonymously).

As for Plaintiff V, there is no real dispute that her conduct was not "casual and voluntary." Francis was convicted under a Plea Agreement of one count of child abuse under Florida Statutes § 827.03(1)(c) and two counts of prostitution under Florida Statutes § 796.07(2)(f) for his actions with Plaintiff V. [R. 420 at 12-13.] There is nothing voluntary about the conduct giving rise to those charges. Labeling the Plaintiffs' conduct with the blanket description of "casual and voluntary" shows that the district court did not exercise the requisite diligence and consideration of all the factors in this case and thus abused its discretion.

Second, the district court erred by giving short shrift to the evidence regarding the amount of harm losing anonymity would cause the Plaintiffs. The court completely disregarded one of their expert's testimony on the psychological damage of being labeled a "slut" and dismissed testimony from the other expert—a clinical psychologist who interviewed and evaluated Plaintiff B, the one who seems to have the most risk of injury from public disclosure of her name—as "conclusory." [R. 419 at 8.] Further, the district court failed to demonstrate its comprehension of what exactly is at stake for the Plaintiffs. The Plaintiffs had put

16

on a convincing case that, by being identified, they will permanently be linked with the videos containing the footage of them.  At the very least, websites such as IMBD.com—an online encyclopedia of movies and actors that has millions of visitors each month—will probably list the Plaintiffs as "stars" of these videos.  These movies are still freely available for purchase through retailers like Amazon.com.  Anyone entering the Plaintiffs' names into an online search engine will find several links containing articles discussing their appearance in the videos.

In a worse scenario, an audience of voyeurs, pornographic consumers, and pedophiles will create a heavy demand for these links, pictures, and videos, knowing they provide an easy way to obtain some explicit sexual images of minors.  In 2002, Girls Gone Wild cameras filmed Veronica Lane, a seventeen-year-old girl from Orlando, Florida, flashing her breasts while driving down the strip in Panama City.  After the footage made its way into two different Girls Gone Wild videos, Lane sued in her own name for invasion of privacy and commercial misappropriation of her image.  *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205 (M.D. Fla. 2002).  As a result of revealing her identity, Lane has been permanently identified in the IMBD.com database for one of the Girls Gone Wild movies as "Veronica Lane: 17-year-old public breast-flasher." [R. 414 (Exhibit A)

17

at 18.]  The movie—including the footage of seventeen-year-old Lane flashing her breasts—is still available from private sellers on Amazon.com.  [*Id.* at 13.]  The district court's requirement for the Plaintiffs to proceed in their own names effectively places a similar price on their abilities to be compensated for their injuries: a lifetime of being subject to any online shopper's desire for underage nudity.  This is certainly part of "all the circumstances" of *this* case.  *Frank*, 951 F.2d at 323.[5]

In light of the serious evidentiary considerations that the district court failed to assign proper weight, the Intervenors' arguments—and lack of arguments—are all the more telling.  When pressed at oral argument to identify a single *specific* harm which would befall Florida Freedom Newspapers as a result of allowing the Plaintiffs to proceed anonymously, counsel could not produce an answer.  The rigorous test that the Fifth Circuit Court of Appeals adopted in *Stegall*, 653 F.2d at 183, and *SMU*, 599 F.2d at 712-13, is designed to weigh that need for openness against the genuine needs for anonymity that arise in a case like this.  A general plea for "openness" is not convincing in light of the strong evidence the Plaintiffs have presented of their need to maintain anonymity.

---

[5] The Plaintiffs acknowledged at oral argument that by proceeding anonymously, they limit their available damages because their names would not be associated with the images in the DVDs that are sold and child pornographers could not identify them.

18

Although the Defendants did not brief the issue and instead relied solely on the Intervenor's Briefs, it is highly unlikely that they could show that granting the Plaintiffs anonymity at trial would cause them any serious harm. Francis pled guilty to criminal charges as the result of his conduct with Plaintiff V, and Francis and Mantra Films have admitted to violating federal law by selling the footage of Plaintiffs B, J, and S. The Defendants are aware of the Plaintiffs' identities and thus are not barred from conducting a full range of discovery in building a defense for trial. Accordingly, we conclude that none of the normal harms threatened to defendants when plaintiffs proceed anonymously are present in this case.

The district court failed to give due consideration to the concerns the Plaintiffs raised about being forced to maintain the suits in their own names. Justice should not carry such a high price, and accordingly we vacate the district court's order. On remand, we direct the district court to enter an order granting the motion to remain anonymous for Plaintiffs B and V, subject to the limitations posed by the First Amendment. As for Plaintiffs J and S, we remand their motion to remain anonymous for the district court's reconsideration in light of the discussion in this opinion. On remand, the district court has the discretion to grant the motion for Plaintiffs J and S, to deny it after appropriate reconsideration, or to grant it in part and provide some intermediate means for maintaining some degree

of anonymity, such as allowing them to maintain pseudonyms but permitting public access to the courtroom.

## IV.

The Intervenors also claim that the sought limitations on the press's ability to cover the trial constitute a prior restraint in violation of the First Amendment. The district court did not reach this argument as it did not grant the Plaintiffs' motion to remain anonymous. "We decline to address it here, preferring that the district court address it in the first instance." *Beavers v. Am. Cast Iron Pipe Co.*, 975 F.2d 792, 800 (11th Cir. 1992). On remand, we direct the district court to consider whether granting anonymity under the terms the Plaintiffs have requested would constitute an impermissible prior restraint under the First Amendment.

**VACATED and REMANDED.**

MOODY, District Judge, concurring in part and dissenting in part:

I agree with the majority that Plaintiffs B and V should have been allowed to proceed anonymously. I dissent as to Plaintiffs J and S because I conclude the trial judge did not abuse his discretion in regard to them.

Initially, the trial court allowed Plaintiffs to proceed anonymously to protect their identities from the public. Their names were provided to Defendants and full discovery was allowed. The trial court stated the issue would be revisited prior to trial. Shortly before trial, Plaintiffs sought to extend their anonymity through trial, and limit the courtroom to essential parties and press during their testimony, the testimony of witnesses revealing identifying information, and the viewing of the films at issue. It is apparent from the trial court's order denying this request that it had grave concern about closing the courtroom to the public during any portion of the trial proceedings.[1] The trial judge discussed at length the reluctance of courts to close trials from public scrutiny. But closing the courtroom is only one way to protect a party's identity. Another way is to use fictitious names and limit the use

---

[1] The trial judge may well have ruled differently had Plaintiffs' request not involved closure of the courtroom.

21

of identifying information.  This approach does not unduly influence the fairness of a proceeding.

The law of the Eleventh Circuit is that, as a general rule, parties are required to use their real names in lawsuits.  But under certain special circumstances parties are allowed to use fictitious names:

> "(W)here the issues involved are matters of a sensitive and highly personal nature" such as birth control, abortion, homosexuality, or other welfare rights of illegitimate children or abandoned families, the normal practice of disclosing the parties' identities yields "to a policy of protecting privacy in a very private matter."  However, the cases affording plaintiffs anonymity all share several characteristics missing here.  The plaintiffs in those actions, at  the least, divulge personal information of the utmost intimacy; many also had to admit that they either had violated state laws or government regulations or wished to engage in prohibited conduct.

*S. Methodist Univ. Ass'n of Women Law Students v. Wynne and Jaffe*, 599 F.2d 707, 712-13 (5th Cir. 1979) (citing *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mont. 1974)).[2]

The trial court determined that Plaintiffs did not meet the exceptions because their acts were not of "utmost intimacy."  But the acts of the individual Plaintiffs vary greatly in that regard.  Plaintiffs J and S flashed their breasts for less than a minute while sitting in their vehicle on a public street.  While many

---

[2]   The decisions of the Fifth Circuit prior to September 30, 1981, are binding precedent in the Eleventh Circuit.  *Bonner v. City of Pritchard*, 661 F. 2d 1206 (11th Cir. 1981).

22

may differ whether such activity constitutes an act of utmost intimacy, the acts of Plaintiffs B and V are much more serious. Plaintiff B and a female friend, while completely naked, were filmed engaging in explicit sexual acts, including manual and oral sex. According to Plaintiff V's allegations, she and a female friend were forced or enticed to massage the genitals of Defendant Francis. Francis gave them $100.00 as payment.

Plaintiff B alleges a homosexual act and Plaintiff V one of masturbation for money, both acts of utmost intimacy. And Plaintiff V alleges an act that might require her to admit to criminal activity. In fact, Defendant Francis was convicted of prostitution for the same act.

The use of Plaintiffs' real names potentially forever link their names to the videos. In contrast, Defendants have not claimed any prejudice from Plaintiffs' use of fictitious names. It is the news media that, after intervening, demanded Plaintiffs' real names be used during trial. The media gives no specific reason why the use of real names is essential to a fair and open trial in this cause.

Under the circumstances of this case, a balancing of the privacy interests of the Plaintiffs against the presumption of openness dictates that Plaintiffs B and V should be allowed to use fictitious names at trial. This does not require the closing of the courtroom. The privacy interests of Plaintiffs J and S, while not nearly as

strong as those of Plaintiffs B and V, deserve some consideration because of their ages and the notion of being treated differently if Plaintiffs B and V are allowed to use fictitious names. But I conclude the trial judge acted within his broad discretion in deciding that Plaintiffs J and S, who flashed their breasts for less than a minute while sitting in their car, could not proceed anonymously.