# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 2, 2019          Decided July 26, 2019

No. 17-1212

IN RE: SEALED CASE

On Appeal from the Order of the
United States Tax Court

*Michael F. Qian*, appointed by the court, argued the cause as *amicus curiae* in support of appellant. With him on the briefs were *Deanne E. Maynard* and *Lena H. Hughes*, appointed by the court.

*Kathleen E. Lyon*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were *Richard E. Zuckerman*, Principal Deputy Assistant Attorney General, and *Teresa E. McLaughlin*, Attorney.

Before: GRIFFITH and SRINIVASAN, *Circuit Judges*, AND GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

GINSBURG, *Senior Circuit Judge*: The Appellant asked to proceed anonymously before the Tax Court when challenging the decision of the Internal Revenue Service (IRS) to deny his application for a whistleblower award. The Tax Court denied

his request, concluding the balance of interests weighed against anonymity because the Appellant is a "serial filer" of whistleblower claims, which he bases upon publicly available information. The Tax Court's rationale was that if it does not "identify serial filers by name, the public will be unable to judge accurately the extent to which the serial filer phenomenon has affected the work of the Tax Court." *Whistleblower 14377-16W v. Comm'r*, 148 T.C. 510, 518-19 (2017).

We first hold we have jurisdiction to hear this interlocutory appeal pursuant to the collateral order doctrine. On the merits, we conclude the Tax Court abused its discretion because identifying the Appellant is not necessary to enable the public to gauge (1) the extent to which serial filers affect the work of the Tax Court or (2) whether any particular petitioner is a serial filer. We therefore remand the case for the Tax Court to reconsider whether the Appellant has otherwise made out a fact-specific basis for protecting his identity under Tax Court Rule 345(a).

## I. Background

The Appellant is a retired certified public accountant who helps his wife run a financial advisory firm. He has worked in the fields of "tax, accounting, and financial advice" for almost 40 years, including two decades as a partner in an accounting firm. Since at least 2010 the Appellant, using information gleaned from public financial records, claims to have noticed accounting irregularities in the filings made with the Securities and Exchange Commission (SEC) by a publicly traded corporation (the Taxpayer), which led him to conclude the Taxpayer had underpaid its taxes by misrepresenting its sales. The Appellant shared this information with the IRS and then filed an application for a whistleblower award pursuant to 26

U.S.C. § 7623(b), which permits any individual who has provided the IRS with information about an underpayment of tax to receive a monetary award if his information enabled the agency to collect additional tax revenue or other proceeds.

The IRS investigated the Taxpayer, all the while keeping the Appellant's identity confidential. In 2016 the IRS denied his claim for a whistleblower award, explaining that its audit of the Taxpayer did not yield any additional proceeds.

The Appellant petitioned the Tax Court for review of that decision. *Whistleblower 14377-16W*, 148 T.C. at 510-11. In addition, he asked to proceed anonymously under Tax Court Rule 345(a), which permits the petitioner in a whistleblower action to file a motion "setting forth a sufficient, fact-specific basis for anonymity." In pleadings and a declaration filed with the Tax Court, the Appellant claimed that disclosure of his identity would cause "severe damage" to his reputation, in a field in which "known whistleblowers are routinely blacklisted by clients." Disclosing his name, he said, would "jeopardize [his] representation of current clients [and] of any future client prospects," cause him and his family to "suffer severe financial harm," "have a negative impact on [his] domestic relationship with [his] spouse," and "elicit harsh and arbitrary retribution by state authorities" because some of his claims before the IRS "involve parties very close to important political figures."

The Tax Court denied the Appellant's motion to proceed anonymously. *Id*. In reaching its decision, the Tax Court first compared the Appellant's situation to that of five prior petitioners who were allowed to proceed anonymously and explained the Appellant's justifications for anonymity were not sufficiently "fact-specific" to satisfy Rule 345(a):

> Unlike the claimants in the five reports summarized

above, petitioner has not identified a taxpayer who, upon learning petitioner's identity, would have the power to, and might be expected to, act against him.... [H]is fears of marital discord, the alienation of unnamed business partners, and retribution from unnamed political figures are speculative, and, thus, petitioner has not provided us with a sufficient 'fact-specific' justification for permission to proceed anonymously.

*Id.* at 517. The Tax Court went on, however, to say it would have allowed him to proceed anonymously were it not for his being the "unusual claimant" who has filed multiple whistleblower claims based upon publicly available information:

Nevertheless, given the early stage of this case, we might otherwise be inclined to weigh the people's interest in knowing who is using the courts as so weak as to give petitioner the benefit of the doubt, at least temporarily. But petitioner is an unusual claimant to our whistleblower jurisdiction. He has so far brought 11 whistleblower cases in the Tax Court.... He also admits that he has before [the IRS] 51 numbered claims supplemental to claims in cases already before the Court....

Petitioner's recourse to publicly available materials to identify supposed tax abuses imposes no natural limit other than his own industriousness on the number of cases he could bring. His lack of an employment or other close relationship to the taxpayers he identifies suggests that he has no familiarity with a taxpayer's basis or rationale for taking what petitioner considers an abusive position. For those reasons, serial claimants of whistleblower awards may disproportionately burden

the Court with petitions only superficially meritorious.

*Id.* at 517-18 (citation omitted).  The Tax Court then concluded:

Unless we identify serial filers by name, the public will be unable to judge accurately the extent to which the serial filer phenomenon has affected the work of the Tax Court because the public would not know whether any particular petitioner of an adverse whistleblower determination had filed petitions appealing other adverse whistleblower determinations....  The public may wish to know the extent to which petitioners with numerous whistleblower claims require ... special handling [by the Tax Court].

*Id.* at 518-19.

Although the Tax Court denied the Appellant's motion to proceed anonymously, it provisionally removed his name from the case caption to permit him to appeal anonymously.  *Id.* at 511 n.2.  Proceeding pro se, he filed a timely appeal in the Eighth Circuit, which transferred the case to this court pursuant to the applicable venue statute.  *Whistleblower 14377-16W v. Comm'r*, No. 17-2678, 2017 WL 7135455, at *1 (8th Cir. Sept. 27, 2017); *see* 26 U.S.C. § 7482(b)(1).

## II. Analysis

We appointed an *amicus curiae* to assist the court in addressing our jurisdiction and the issues the Appellant has raised on appeal.  As described below, however, the dispute has narrowed significantly on appeal because the parties agree, as do we, upon the appropriate legal standard for evaluating the petition of a tax whistleblower to proceed anonymously in the Tax Court.

## A. Collateral Order Doctrine

Before addressing the merits, we are obliged to determine whether we have jurisdiction over this case under the collateral order doctrine. *See United States v. Microsoft*, 56 F.3d 1448, 1457 (D.C. Cir. 1995) (leaving open the question whether an order granting anonymity fits within the doctrine). We agree with the parties that we do.

The Tax Court's order denying anonymity satisfies the requirements of the doctrine because it: (1) "conclusively determines the disputed question," that is, whether the Appellant may proceed anonymously; (2) "resolves an important issue completely separate from the merits of the action"; and, (3) if the Appellant's identity is disclosed as required by the Tax Court, the issue would be "effectively unreviewable on appeal from a final judgment." *In re Sealed Case (Med. Records)*, 381 F.3d 1205, 1209 (D.C. Cir. 2004). Every court of appeals to consider the question has applied the collateral order doctrine to permit immediate appeal of an order denying a motion to proceed anonymously, and we see no reason to reach a contrary conclusion. *See James v. Jacobson*, 6 F.3d 233, 236-38 (4th Cir. 1993); *Doe v. Stegall*, 653 F.2d 180, 183 (5th Cir. 1981); *Doe v. Village of Deerfield*, 819 F.3d 372, 375-76 (7th Cir. 2016); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1066-67 (9th Cir. 2000); *Raiser v. Brigham Young Univ.*, 127 F. App'x 409, 410 (10th Cir. 2005); *Doe v. Frank*, 951 F.2d 320, 322 & n.1 (11th Cir. 1992). Having assured ourselves of our jurisdiction, we turn to the merits of the case.

## B. The Appropriate Legal Test

Tax Court decisions are reviewed "in the same manner and to the same extent as decisions of the district courts in civil

actions tried without a jury." 26 U.S.C. § 7482(a)(1). Although we review de novo the criteria used by a district court to decide whether to grant a motion to proceed anonymously, *cf. Price v. District of Columbia*, 792 F.3d 112, 114 (D.C. Cir. 2015), we review a court's application of those criteria only for an abuse of discretion. *See Microsoft*, 56 F.3d at 1464; *James*, 6 F.3d at 239. In so doing, we must consider "whether the decision maker failed to consider a relevant factor [or] relied on an improper factor, and whether the reasons given reasonably support the conclusion." *Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas v. Babbitt*, 43 F.3d 1491, 1497 (D.C. Cir. 1995).

This court has not provided clear guidance as to when a petitioner may proceed anonymously. In *Microsoft*, we said only that the district court should take into account the risk of unfairness to the opposing party, as well as the "customary and constitutionally-embedded presumption of openness in judicial proceedings." 56 F.3d at 1464 (quoting *Stegall,* 653 F.2d at 186). In that case, the "judge did not fulfill his duty to consider ... the public interest in knowing the identities of the participants in this proceeding, nor did he consider possible unfairness to [the defendant]." *Id.*

Consistent with *Microsoft*, with the views of both parties in this case, and with many of our sister circuits, we hold that the appropriate way to determine whether a litigant may proceed anonymously is to balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure. *See, e.g.*, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008) (characterizing the relevant inquiry in the Fifth, Ninth, Tenth, and Eleventh Circuits as "a balancing test that weighs the plaintiff's need for anonymity against countervailing interests in full disclosure"); *see also* Tax Court Rule 345, explanation to 2012 amendments

(explaining Rule 345(a) embodies a balancing test whereby a "whistleblower's identity" is "entitled to protection in the Tax Court upon a sufficient showing of harm that outweighs counterbalancing societal interests in knowing the whistleblower's identity") (citing *Whistleblower 14106-10W v. Comm'r*, 137 T.C. 183 (2011)). There is, of course, a presumption in favor of disclosure, which stems from the "general public interest in the openness of governmental processes," *Washington Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 899 (D.C. Cir. 1996) (quotation marks omitted), and, more specifically, from the tradition of open judicial proceedings. *See Doe v. Frank*, 951 F.2d at 324 ("Lawsuits are public events. A plaintiff should be permitted to proceed anonymously only in ... exceptional cases"); FED. R. CIV. P. 10(a) ("The title of the complaint must name all the parties"); FED. R. CIV. P. 17(a) ("An action must be prosecuted in the name of the real party in interest"). As the Seventh Circuit explained, "[i]dentifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts." *Doe v. Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d 869, 872 (1997); *accord Doe v. Public Citizen*, 749 F.3d 246, 273 (4th Cir. 2014).

In order to ensure the balance is appropriately struck, courts have endorsed various multi-factor tests involving as many as ten non-exhaustive factors. *See, e.g.*, *Sealed Plaintiff*, 537 F.3d at 189-90; *James*, 6 F.3d at 238-39; *Stegall*, 653 F.2d at 186; *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004); *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010). Some factors are "specific aspects of a plaintiff's potential privacy interests" or the weight to be given those interests, but others "go more to the weight of the countervailing interest in open judicial proceedings." *Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006). District courts

in our circuit often consider the five factors set forth by the Fourth Circuit in *James*, 6 F.3d at 238-39, perhaps because we quoted it approvingly in *Microsoft*, 56 F.3d at 1464. *See Sandberg v. Vincent*, 319 F. Supp. 3d 422, 426 (D.D.C. 2018) (collecting cases).

We continue to think those five factors serve well as guideposts from which a court ought to begin its analysis:

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature;
>
> [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;
>
> [3] the ages of the persons whose privacy interests are sought to be protected;
>
> [4] whether the action is against a governmental or private party; and, relatedly,
>
> [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

6 F.3d at 238. The Tax Court has previously cited a "non-exhaustive" list of ten factors borrowed from the Second Circuit to guide its analysis of a request made under Rule 345(a), *see Whistleblower 14106-10W*, 137 T.C. at 193-94 (citing *Sealed Plaintiff*, 537 F.3d at 189-90); we have no quarrel with its use of the Second Circuit's list, which encompasses the five factors from *James*, as long as these factors inform the ultimate balancing of the public and private

interests at stake.

Indeed, our singling out of the *James* factors should not lead a trial court to engage in a wooden exercise of ticking the five boxes. *Cf. Sealed Plaintiff*, 537 F.3d at 189-90 ("caution[ing] that [its 10-factor] list is non-exhaustive and district courts should take into account other factors relevant to the particular case under consideration"); *Stegall*, 653 F.2d at 185-86 ("we think it would be a mistake to distill a rigid, three-step test for the propriety of party anonymity from [a] fact-sensitive holding .... We advance no hard and fast formula for ascertaining whether a party may sue anonymously"). A court that fails to consider one of the five enumerated factors from *James* or one of the ten enumerated factors from the Second Circuit's list therefore does not automatically abuse its discretion, as long as it has considered the factors relevant to the case before it.

## C. Applying the Balancing Test

In this case, the Appellant urges us to find the Tax Court abused its discretion in several ways: The Court (1) improperly considered that he is a "serial filer" using public information to make his whistleblower claims; (2) improperly considered the merits of his claims when it assumed petitions by serial filers using public information are "only superficially meritorious"; (3) failed to consider certain relevant factors weighing in the Appellant's favor; and (4) discounted the economic and professional harms that would befall the Appellant if he were identified, and therefore incorrectly concluded he did not advance a fact-specific basis for preserving his anonymity. Because we agree with the Appellant's first point, we do not reach the other three.

As to that first contention, the Appellant claims there is no

reason to disfavor filers in his position. In his view, the number of whistleblower claims a person has filed and the source of information upon which he relied to make those claims do not bear upon any legitimate public interest in disclosing his name; nor does it affect the interests of the public in ensuring fair proceedings and in understanding the work of the Tax Court.[*] Specifically, the Appellant points out that the Tax Court failed to identify any legal basis for disfavoring serial filers using public information: Neither the whistleblower statute nor any precedent suggests a public policy disfavoring repeat filers or filers who rely upon publicly available information. In any event, says the Appellant, disclosing his name would not serve such a policy.

We agree, based upon the Appellant's last point, that the reasoning of the Tax Court is not sound. The court said:

> Unless we identify serial filers by name, the public will be unable to judge accurately the extent to which the serial filer phenomenon has affected the work of the Tax Court because the public would not know whether any particular petitioner ... had filed petitions appealing other adverse whistleblower determinations.

148 T.C. at 518-19. It simply does not follow that the public must know the serial filers' names in order to determine either the extent to which serial filers affect the work of the Tax Court

---

[*] The IRS explains the Appellant's use of public information means he "does not face the same risk of retaliation that threatens insiders." Appellee's Br. 45. True, but this misses the point: The Tax Court reasoned his use only of public information increased the *public's interest* in disclosure, 148 T.C. at 518, but that fact is relevant only insofar as it diminishes the *whistleblower's interest* in anonymity.

or whether any particular whistleblower is a serial filer. As the Appellant correctly points out, the Tax Court can serve those interests by alerting the public to the serial filer's history and by explaining the burdens that serial filers impose upon the court; indeed, that is precisely what it did in this case. The use of a unique pseudonym (John Doe, Jane Roe and the like) in all the cases filed by a particular filer would similarly inform the public in the two respects identified by the Tax Court.[†] *Cf. James*, 6 F.3d at 241-42 (remanding in part because the district court did not consider the option of imposing conditions on the plaintiffs' use of pseudonyms that "could effectively relieve the court's expressed concerns").

### III. Conclusion

We conclude the Tax Court's denial of the Appellant's request to proceed anonymously because he is a serial filer who relies upon public information was an abuse of discretion. *See Kickapoo*, 43 F.3d at 1497 ("An appellate court, in reviewing for an abuse of discretion, must consider ... whether the reasons given reasonably support the conclusion"). Therefore, we remand the case to the Tax Court to determine anew whether the Appellant has satisfied his burden under Rule 345(a) to set forth a "sufficient, fact-specific basis for anonymity."

*So ordered*.

---

[†] Indeed, a dynamic pseudonym might itself convey the number of cases that a particular person has filed, as in "John Doe (51)" for the Appellant.