# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Decided August 7, 2020

Reissued August 20, 2020

No. 19-1216

IN RE: SEALED CASE

On Joint Motion to Enter Proposed Protective Order with
Separate Statements and
Motion to Proceed Under a Pseudonym

Before: TATEL, MILLETT, and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*:  An oil refinery applied to the Environmental Protection Agency for a waiver of certain statutory obligations involving the use of renewable fuels. That Refinery then filed a petition for review of the EPA's decision in this court.

By separate order issued today, we grant the parties' joint motion for a protective order governing confidential business information in this case. This opinion concerns only the Refinery's separate motion to keep its identity under seal and to proceed under a pseudonym while litigating its petition for

review. Because there is a strong presumption of openness in judicial proceedings and the Refinery has offered no sufficient basis for closing the public's eyes to its identity, the motion to proceed pseudonymously is denied.

**I**

The Clean Air Act's Renewable Fuel Standard Program, 42 U.S.C. § 7545(o), was enacted in 2005 "[t]o move the United States toward greater energy independence and security," and "to increase the production of clean renewable fuels." Energy Independence and Security Act of 2007, Pub. L. No. 110-140, preamble, 121 Stat. 1492, 1492. To achieve those goals, Congress set annual benchmarks for the amount of renewable fuel to be included in transportation fuel sold or introduced into commerce in the United States. *See* 42 U.S.C. § 7545(o)(2)(A)(i).

The benchmarks apply to both refineries and fuel importers. 42 U.S.C. § 7545(o)(3)(B)(ii)(I). For small refineries, the statute allows the EPA to grant or to extend individual exemptions if compliance would impose a "disproportionate economic hardship[.]" *Id.* § 7545(o)(9)(A)–(B). In evaluating those petitions, the EPA is required to consult with the Department of Energy and to consider "other economic factors." *Id.* § 7545(o)(9)(B)(ii).

The Refinery is a small, privately owned company that operates an oil refinery. In 2018, it petitioned the EPA for an exemption from its 2018 renewable fuels obligation. The Refinery subsequently filed a petition for review with this court from the EPA's decision. *See* Petition for Review, *In re Sealed Case*, No. 19-1216 (D.C. Cir. Oct. 21, 2019). The Refinery also filed a motion to maintain the entire case under seal.

On March 3, 2020, this court denied the motion to maintain the entire case under seal, and the parties were ordered to submit a proposed protective order limited to justifiably confidential material. *See* Order, *In re Sealed Case*, No. 19-1216 (D.C. Cir. March 3, 2020). In response, the Refinery and the EPA proposed a joint protective order to seal only the confidential business information in the case. In addition to that joint request, the Refinery requested that it be allowed to proceed pseudonymously. The EPA did not join that portion of the motion.

## II

This court has jurisdiction to review a "final action" taken by the EPA under 42 U.S.C. § 7607(b)(1), and to make any procedural rulings related to the adjudication of a petition seeking review of challenged EPA action.

## III

The presumption of openness in judicial proceedings is a bedrock principle of our judicial system. *See Courthouse News Serv. v. Planet*, 947 F.3d 581, 589 (9th Cir. 2020) ("The presumption of access to judicial proceedings flows from an 'unbroken, uncontradicted history' rooted in the common law notion that 'justice must satisfy the appearance of justice.'") (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573–574 (1980) (plurality opinion)). That presumption is both "customary and constitutionally-embedded[.]" *In re Sealed Case*, 931 F.3d 92, 96 (D.C. Cir. 2019) (quoting *United States v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995)). The courts' emphasis on transparency "stems from the general public interest in the openness of governmental processes and, more specifically, from the tradition of open judicial proceedings[.]" *Id.* (formatting modified).

With open doors as our starting point, we generally require "parties to a lawsuit [to] openly identify themselves * * * to 'protect[] the public's legitimate interest in knowing all of the facts involved, including the identities of the parties.'" *Microsoft*, 56 F.3d at 1463 (quoting *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992)); *see Doe v. Public Citizen*, 749 F.3d 246, 273 (4th Cir. 2014) ("Pseudonymous litigation undermines the public's right of access to judicial proceedings."); *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997) ("Identifying the parties to the proceeding is an important dimension in publicness. The people have a right to know who is using their courts.").[1]

In light of that deeply rooted tradition, parties who seek to proceed pseudonymously seek a "rare dispensation" from the court. *Microsoft*, 56 F.3d at 1464 (quoting *James v. Johnson*, 6 F.3d 233, 238 (4th Cir. 1993)). The moving party bears the weighty burden of both demonstrating a concrete need for such secrecy, and identifying the consequences that would likely befall it if forced to proceed in its own name. *See In re Chiquita Brands Int'l, Inc. Alien Tort Statute & Shareholder Derivative Litig.*, __F.3d__, No. 19-11494, 2020 WL 4013070, at *6 (11th Cir. July 16, 2020) (holding that the plaintiffs seeking to proceed under a pseudonym "bore the burden to establish * * * that their privacy rights outweigh the presumption");

---

[1] When pseudonymous status hides the suing party's identity from the defendant, that lack of openness can implicate significant due process concerns. *Microsoft*, 56 F.3d at 1463. In such a case, a court ruling on a request to proceed anonymously "should take into account the risk of unfairness to the opposing party." *Id.* at 1464. And if proceeding pseudonymously is allowed, the court must provide appropriate procedures to ensure full fairness in the process. Because the EPA is aware of the Refinery's identity, that concern is not implicated in this case.

*Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011) (moving party must "show[] * * * he 'has a substantial privacy right'") (quoting *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992)).  Speculative assertions of harm will not suffice.

Once a legitimate showing of need has been made, the court must then "balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure." *In re Sealed Case*, 931 F.3d at 96.  This balancing test is necessarily flexible and fact driven.  As a starting point, we weigh the following five non-exhaustive factors:

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature;
>
> [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;
>
> [3] the ages of the persons whose privacy interests are sought to be protected;
>
> [4] whether the action is against a governmental or private party; and, relatedly,
>
> [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Id.* at 97 (alterations in original) (quoting *James*, 6 F.3d at 238).  None of those factors, or any others, weigh in favor of maintaining the Refinery's anonymity during proceedings in this court.

*First*, the Refinery has failed to demonstrate that requiring it to proceed in its own name will risk the disclosure of "sensitive and highly personal" information, *In re Sealed Case*, 931 F.3d at 97. To the extent that confidential business information is implicated, the parties' joint protective order, which we grant today, protects against that harm.

Beyond those traditionally confidential business records, the Refinery has made no showing that its mere identity in this litigation is a sensitive or highly personal matter. That factor commonly involves intimate issues such as sexual activities, reproductive rights, bodily autonomy, medical concerns, or the identity of abused minors. *See, e.g.*, *Francis*, 631 F.3d at 1316–1318 (protecting plaintiffs' identities in case involving sexual abuse of minors); *see also Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001) (terming "abortion as the paradigmatic example of the type of highly sensitive and personal matter that warrants a grant of anonymity").

The Refinery's asserted interests bear no resemblance to those types of intimate or sensitive personal information. For starters, it is far from clear whether companies even have "personal" privacy rights beyond the traditional privileges for confidential business documents, attorney-client communications and work product, and trade secrets. *Cf. FCC v. AT&T Inc.*, 562 U.S. 397, 406 (2011) (noting in a Freedom of Information Act exemption case that "the specific concept of 'personal privacy,' at least as a matter of common law, did not apply to corporations") (citing RESTATEMENT (SECOND) OF TORTS § 652I, cmt. c (AM. LAW INST. 1976)).

Regardless, the Refinery has not even made a colorable showing of injury to a privacy interest. The Refinery simply alleges that "[u]nveiling [its] identity would" reveal

information "to its competitors, creditors and suppliers." Joint Motion to Enter Proposed Protective Order with Separate Statements at 3, *In re Sealed Case*, No. 19-1216 (D.C. Cir. April 2, 2020) ("Joint Motion"). But the Refinery offers nothing concrete to establish that revealing its identity would cause it any cognizable harm.

At most, the Refinery argues that its "creditors and suppliers *could* take adverse action by increasing the cost and reducing the availability of unsecured credit associated with a perceived increase in risk." Declaration of Robert Winchester, Joint Motion, Ex. 3, Attachment A at 2 ¶ 3 ("Winchester Decl.") (emphasis added). There is no showing of a substantial risk of privacy injury that *would* occur. For example, the Refinery fails to explain why it would not already have to disclose its financial condition to potential creditors, or even how the conferral of an economic hardship exemption would implicate any financial information different from what creditors would already know or be able to access.

The Refinery also asserts that its "competitors * * * *could*, for example, use the information as leverage against [the Refinery], or to encroach on [the Refinery]'s supply or customer base, or to inform pricing of fuel at various times throughout the year." Winchester Decl. at 2 ¶ 4 (emphasis added). That harm, it is asserted, "could have devastating consequences for [the Refinery] and would be a threat to its ongoing viability." *Id.* at 2 ¶ 5.

Those claims, however, not only are hypothesized harms, but also are presented in entirely conclusory form, devoid of factual corroboration or elucidation. What leverage the mere fact of an exemption decision would provide to competitors and how it would harm the Refinery is not explained. Nor are we given any hint as to how an exemption application or

decision would affect supplies or customers, let alone inform fuel pricing, Winchester Decl. at 2 ¶ 4. Especially because the litigation concerns a requested 2018 exemption and so, on the record and declarations before us, pertains not to the Refinery's current economic status, but to its condition two years ago.

While the Refinery peppers its argument with the term "hardship," competitors and customers presumably are already aware that the Refinery is a small refinery. And among small refineries, applications for exemptions in 2018 appear to have been the norm—not the exception. In 2018, the EPA received applications for exemptions from 44 small refineries. *See RFS Small Refinery Exemptions*, ENVIRONMENTAL PROTECTION AGENCY (July 16, 2020), https://www.epa.gov/fuels -registration-reporting-and-compliance-help/rfs-small-refinery -exemptions. Information from the Energy Information Administration indicates that, as of January 1, 2019, there were only 53 refineries that met the statutory definition of a "small refinery," which is a necessary predicate for eligibility for the small refinery exemption. *See* KELSI BRACMORT, CONG. RESEARCH SERV., R46244, THE RENEWABLE FUEL STANDARD (RFS): FREQUENTLY ASKED QUESTIONS ABOUT SMALL REFINERY EXEMPTIONS (SREs) 4 (2020). That means that approximately 83% of small refineries applied for exemptions. The Refinery's application would put it in the mainstream, not in some sensitive outlier status.

On top of that, the standards applied by the EPA in 2018 in ruling on exemption applications revealed little information about the specifics of a refinery's financials. In a memorandum announcing the 31 exemptions granted in 2018, the EPA explained the terms for receiving an exemption. The EPA's position was that a small refinery could receive an exemption if it experienced *either* disproportionate impacts *or* viability impairment. *See Advanced Biofuels Ass'n v. EPA*, 792 F.

App'x 1, 4 (D.C. Cir. 2019) (citing Anne Idsal, Acting Assistant Administrator, Office of Air & Radiation, Decision on 2018 Small Refinery Exemption Petitions at 1 (Aug. 9, 2019)). The EPA also announced that it was granting full exemptions in cases where the Department of Energy recommended only partial exemptions. *Id.* As a result, the Refinery's application for an exemption in 2018 does not reveal whether it claimed that the fuel standards simply had a disproportionate impact on it, or actually impaired its viability. Based on the seemingly routine nature of requests for exemptions and the EPA's approach to exemptions in 2018, the Refinery's conclusory and unexplained claims that its identity is a sensitive or personal matter provide far too frail a basis on which to confer the rare dispensation of pseudonymous status.[2]

*Second*, the Refinery itself faces no risk of physical or mental harm either. The asserted injuries are purely economic, and speculative at that. "[C]ourts consistently have rejected anonymity requests to prevent speculative and unsubstantiated claims of harm to a company's reputational or economic interests[.]" *Public Citizen*, 749 F.3d at 274; *see also National Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989) (per curiam) (same). With its confidential business information separately protected from disclosure by the protective order, the Refinery has provided no basis for concluding that disclosure of its business name will lead to the type of harm that could support pseudonymous status.

*Third*, the Refinery has chosen to sue a government agency regarding the operation of a statutory program and, in particular, applications for special exemptions from the law's obligations. As many courts have recognized, there is a

---

[2] Our discussion here is merely descriptive of the EPA's approach to exemptions in 2018, and reflects no views on the merits of any challenges to the EPA's process.

heightened public interest when an individual or entity files a suit against the government. *See Public Citizen*, 749 F.3d at 274; *see also Doe v. Megless*, 654 F.3d 404, 411 (3d Cir. 2011) (stating that the public interest is heightened "because [d]efendants are public officials and government bodies") (formatting modified); *cf. FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) ("The appropriateness of making court files accessible is accentuated in cases where the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch.").

That public interest is intensified when, as here, the party asking to proceed anonymously seeks to alter the operation of public law both as applied to it and, by virtue of the legal arguments presented, to other parties going forward. The Renewable Fuel Standard is a creature of statute, and its terms have been carefully formulated by Congress. *See* 42 U.S.C. § 7545(o). The framework for exemptions is similarly set out in the statute and agency regulations. *See id.* § 7545(o)(9). Given that the subject matter of the suit is whether the agency has reasonably and evenhandedly applied the statutory and regulatory scheme, the public interest in open and transparent proceedings far outweighs the Refinery's conclusory assertions of factually unsubstantiated economic harms.

In short, none of the factors commonly involved in analyzing a request to proceed anonymously weigh in the Refinery's favor. And the Refinery's additional arguments add nothing to its side of the scale either.

For starters, the Refinery points out that the EPA treats applications and exemption decisions as confidential. That is true. But agency choices do not dictate judicial procedures.

And for whatever it is worth, the EPA has not supported extending its confidentiality to the Refinery's litigation of its petition for review here.

The Refinery also points out that the Ninth Circuit permitted its duplicate petition in that circuit to proceed under seal pending a decision on the merits. *See* Refinery Rule 28(j) Letter at 1 (Dec. 6, 2019). But the Ninth Circuit has simply left the question of anonymity "subject to further review by the merits panel." *Id.* at 2. It has not agreed that proceeding pseudonymously is warranted. The Ninth Circuit, in short, decided only not to decide right now. We conclude that the time for decision is ripe.

Lastly, we note that another small refinery that challenges the EPA's exemption decisionmaking has proceeded in its own name in this court. *See* Petition for Review, *Wynnewood Refining Co. v. EPA*, No. 20-1099 (D.C. Cir. March 26, 2020). There also are numerous other named petitioners before this court challenging a variety of other small refinery exemption decisions by the EPA. *See, e.g., Sinclair Wyoming Refining Co. v. EPA*, No. 19-1196; *Renewable Fuels Ass'n v. EPA*, No. 19-1220. In all of those cases, the petitioners contend that they should receive an undue economic hardship exemption. Yet none of them has found it necessary to proceed anonymously. To permit the Refinery to proceed pseudonymously would treat it differently than its similarly situated counterparts. The Refinery has offered no persuasive reason why we should accord it that special treatment.

**IV**

Weighing the markedly thin showing of potential injury by the Refinery against the substantial public interest in transparency and openness in cases involving the government's administration of an important statutory and regulatory

scheme, we conclude that the Refinery has not overcome the "customary and constitutionally-embedded presumption of openness in judicial proceedings," *In re Sealed Case*, 931 F.3d at 96 (quoting *Microsoft*, 56 F.3d at 1464).  The motion to proceed under a pseudonym is denied.  The Refinery must, within 14 days of this order, either file an unsealed version of its petition or dismiss the petition for review.

*So ordered.*