# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued December 10, 2024          Decided July 1, 2025

No. 24-5049

JOHN DOE,
APPELLANT

v.

TRAVIS HILL, IN HIS OFFICIAL CAPACITY AS ACTING
CHAIRMAN OF THE FDIC AND FEDERAL DEPOSIT INSURANCE
CORPORATION,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:24-cv-00488)

———

*Alexandra Lichtenstein* argued the cause for appellant. With her on the briefs were *Joanna K. Wasik*, *Kelsi Brown Corkran*, and *Joseph W. Mead*.

*Sue Huhta* was on the brief for *amici curiae* Community Legal Services of Philadelphia, et al. in support of appellant.

*Jane M. Lyons*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Matthew M. Graves*, U.S. Attorney at the time the brief was filed, and *Brian P. Hudak*, Assistant U.S. Attorney.

Before: MILLETT and RAO, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

Opinion for the court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*:   This is an interlocutory appeal from the district court's denial of John Doe's motion to proceed in his lawsuit under a pseudonym.   Dr. Doe challenges the constitutionality of the Federal Deposit Insurance Corporation's ban on hiring those who have been convicted of a felony.   He moved to proceed under a pseudonym to avoid reassociating himself with his sealed Ohio felony convictions.   The district court denied Dr. Doe's motion.

We affirm.   Because federal court proceedings are presumptively open and transparent, proceeding under a pseudonym is rarely granted.   Although Dr. Doe has a legitimate privacy interest in his sealed felony convictions, that interest is insufficient in this case to overcome the strong presumption against pseudonymous litigation.

## I

### A

The Banking Act of 1933 created the Federal Deposit Insurance Corporation to "provide for the safer and more effective use of the assets of banks[.]"   Pub. L. 73-66, 48 Stat. 162 (1933).   The FDIC maintains the stability of the nation's financial system by insuring deposits valued in the trillions of dollars.

By law, those who have "been convicted of any felony" are barred from working for the FDIC.   12 U.S.C.

§ 1822(f)(4)(E)(i); 12 C.F.R. § 336.4(a)(1). Congress originally passed that prohibition to regulate hiring by the Resolution Trust Corporation, an independent agency created by Congress in response to the savings and loan crisis in the late 1980s. Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, § 501, 103 Stat. 183, 392-393. When Congress transferred the Resolution Trust Corporation's responsibilities to the FDIC in 1993, the statutory bar on hiring convicted felons carried over as well. Resolution Trust Corporation Completion Act, Pub. L. No. 103-204, § 19, 107 Stat. 2369, 2404 (1993).

**B**

The Federal Rules of Civil Procedure create a presumption against pseudonymous litigation. Civil complaints filed in federal court must "name all the parties[,]" FED. R. CIV. P. 10(a), and the suit must be prosecuted in "the name of the real party in interest," *id.* 17(a)(1).

This presumption is grounded in "the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *United States v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995) (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)). We generally require "parties to a lawsuit [to] openly identify themselves * * * to protect[] the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *In re Sealed Case*, 971 F.3d 324, 326 (D.C. Cir. 2020) ("*Sealed Case II*") (quoting *Microsoft*, 56 F.3d at 1463) (formatting modified).

Requiring parties to litigate under their real names serves important values. Accurate party names allow citizens to evaluate the nature of the claims raised and the interests at stake, to assess "the real-world aftermath of a suit," and to

determine for themselves whether "justice was done." *Doe v. Massachusetts Inst. of Tech.*, 46 F.4th 61, 68 (1st Cir. 2022). Knowing the identity of parties also makes it easier for citizens to investigate abuses of the judicial process like judicial conflicts of interest and *ex parte* contacts, and it promotes the appearance of fairness. *Id.* at 68-69. "Secrecy breeds suspicion[,]" and so "[s]ome may believe that a party's name was masked as a means of suppressing inconvenient facts and that the court was either asleep at the wheel or complicit in the cover up." *Id.* at 69.

Nonetheless, federal courts may grant "the rare dispensation of pseudonymous status" when warranted to fairly provide justice in a particular case. *See Sealed Case II*, 971 F.3d at 328. Exercise of that discretion is guided by a five-factor balancing test that considers (1) the strength and sensitivity of the privacy interests at stake, (2) the risk of retaliation against a named plaintiff, (3) the sensitivity of the party's age, (4) the identity of the opposing party, and (5) the risk of unfairness to the opposing party. *In re Sealed Case*, 931 F.3d 92, 97 (D.C. Cir. 2019) ("*Sealed Case I*").

Those five factors are "non-exhaustive," and the court's "flexible and fact driven" inquiry ultimately depends on the totality of the circumstances of the case before it. *Sealed Case II*, 971 F.3d at 326. Together, the five factors and any other relevant considerations gauge the competing public and private interests at stake in the litigation and guide the court's determination of whether the presumption against pseudonymity has been overcome.

The moving party bears the burden of showing that the interest in proceeding under a pseudonym outweighs the "countervailing interests in full disclosure." *Sealed Case II*, 971 F.3d at 326 (quoting *Sealed Case I*, 931 F.3d at 96). In

this circuit, requests to proceed under a pseudonym in the district court are referred to the Chief Judge of the United States District Court for the District of Columbia.   D.D.C. Local Civ. R. 40.7(f).

## C

Dr. Doe was convicted of two Ohio felonies when he was a young man in the early 1990s.   Since then, Dr. Doe has lived a law-abiding life, obtained a PhD, and become a federal public servant with a security clearance.   In 2009, he applied for and received a pardon from the Ohio governor, and his felony convictions were sealed by an Ohio court.

Under Ohio law, a governor's pardon provides one basis for an individual to seek sealing of his or her criminal conviction.   OHIO REV. CODE ANN. § 2953.33(A)(3) (West 2025).   When a criminal conviction is sealed, the conviction generally "shall be considered not to have occurred[,]" and the public record of the conviction is made inaccessible to the public.   *Id.* § 2953.32(D)(2)(b) (West 2025).   Nonetheless, at the time giving rise to the events of this case, Ohio law allowed employers to ask about sealed felony convictions when the "question bears a direct and substantial relationship to the position for which the person is being considered."   *Id.* § 2953.33(B)(1) (West 2022).   Individuals with a sealed felony conviction did not have a right under state law to answer as if the conviction had not occurred.[1]

---

[1] Ohio law now forbids employers from asking questions about sealed felony convictions, and anyone with a sealed conviction may answer as if the conviction never occurred.   OHIO REV. CODE ANN. § 2953.34(L)(1) (West 2025).   There are, however, limited exceptions for sensitive government positions like law enforcement. *See id.* § 2953.34(A)(6) (West 2025).

In 2022, Dr. Doe applied to work at the FDIC. After running a background check on Dr. Doe, the FDIC requested information about his criminal record, and Dr. Doe informed the FDIC about his sealed Ohio felony convictions. The FDIC then denied his application because of the statutory bar against hiring anyone who "has been convicted of any felony[.]" 12 U.S.C. § 1822(f)(4)(E)(i).

Dr. Doe then sued the FDIC, challenging the constitutionality of the bar on hiring felons. Dr. Doe alleges violations of his constitutional rights to equal protection, substantive due process, and procedural due process under the Fifth Amendment. U.S. CONST. Amend. V. He also alleges a violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(3).

Simultaneously with filing his complaint, Dr. Doe moved to proceed under a pseudonym. The district court denied Dr. Doe's motion. *Doe v. McKernan*, No. 24-CV-488, 2024 WL 1143932, at *3 (D.D.C. Feb. 23, 2024). The court credited Dr. Doe's arguments that he would experience psychological harm if he were publicly reassociated with his felony convictions and that his suit poses no risk of unfairness to the government because it already knew or could easily learn his identity. *Id.* at *2-3. The court thus held that factors two and five of the *Sealed Case I* framework favored pseudonymity. *Id.* At the same time, the district court concluded that a privacy interest in a felony conviction is not akin to the traditional privacy interests that warrant pseudonymity, and that Dr. Doe's suit against the federal government favors transparency, so that factors one and four weighed against pseudonymity. *Id.* Dr. Doe conceded that factor three does not favor pseudonymity because Dr. Doe is not a minor. *Id.* at *3. After balancing all of the factors, the district court concluded that Dr. Doe must proceed under his real name. *Id.* This appeal followed.

## II

The district court had jurisdiction under 28 U.S.C. § 1331. Our jurisdiction arises pursuant to the collateral order doctrine. *Sealed Case I*, 931 F.3d at 95.

We review "de novo the criteria used by a district court to decide whether to grant a motion to proceed anonymously," and we review the "application of those criteria" to the facts of a particular case for an abuse of discretion. *Sealed Case I*, 931 F.3d at 96. Neither party argues that the district court erred in its choice of legal criteria or that other factors should have been considered, so our review is limited to whether the district court's application of the criteria in this case was an abuse of discretion. An error of law is "'by definition' an abuse of discretion[.]" *Jeffries v. Barr*, 965 F.3d 843, 855 (D.C. Cir. 2020) (quoting *Koch v. Cox*, 489 F.3d 384, 388 (D.C. Cir. 2007)).

## III

The district court did not commit legal error when applying the *Sealed Case I* factors, and the court's balancing of the relevant considerations in this case was well within its discretion. All agree that the third factor—age of the parties— does not support pseudonymity, *McKernan*, 2024 WL 1143932, at *3, and we assume without deciding that the district court appropriately concluded that the second (risk of retaliatory physical or mental harm) and fifth (prejudice to the opposing party) factors weighed in favor of anonymity. So this case comes down to the court's application of the first (preserving privacy) and fourth (parties involved) factors. Because the district court reasonably concluded that those

factors disfavor pseudonymity and outweigh the other factors, we affirm.

**A**

The first factor concerns "whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature[.]" *Sealed Case I*, 931 F.3d at 97 (citation omitted). The district court appropriately exercised its discretion in concluding that Dr. Doe's felony convictions do not qualify as "matter[s] of [a] sensitive and highly personal nature." *Id.*

In judicial proceedings, the starting presumption is of openness and public identification of the parties. *Sealed Case II*, 971 F.3d at 325; *Sealed Case I*, 931 F.3d at 96. Dr. Doe's privacy interest does not weigh against that presumption for three reasons.

*First*, a privacy interest rests "in part on the degree of dissemination of the allegedly private fact[.]" *Reporters Comm.*, 489 U.S. at 763. A felony conviction is not "practical[ly] obscur[e]" because felony trials and convictions are matters of public record conducted in open court proceedings. *ACLU v. Department of Justice*, 655 F.3d 1, 9 (D.C. Cir. 2011) (quoting *Department of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 762 (1989)). As a result, "[i]f someone wants to know whether his neighbor or potential employee has been indicted for, convicted of, or pled guilty to a[n] * * * offense, he may well find out by simply entering a Google search for that person's name." *ACLU*, 655 F.3d at 10. Even convictions that occurred before the internet era may be easily discoverable as newspapers upload their

archives. This accessibility reduces the weight of a privacy interest in a felony conviction for purposes of pseudonymity.

Dr. Doe argues that, even if felony records are usually public, his efforts to keep his records secret should matter. Dr. Doe has paid for monitoring services and has requested his Identity History Summary from the FBI.

Yet the types of privacy interests for which pseudonymous proceedings have commonly been permitted have not turned on individualized efforts to suppress otherwise publicly accessible information. Instead, courts consider whether the information is of a kind that, by its very nature, is likely to be withheld from and inaccessible to others. The privacy interests that traditionally warrant pseudonymity—"intimate issues such as sexual activities, reproductive rights, bodily autonomy, medical concerns, or the identity of abused minors[,]" *Sealed Case II*, 971 F.3d at 327—concern very sensitive information that the public has recognized as insulated from public scrutiny through legal norms and custom.

Felony convictions are not in that category as they have long been a legitimate matter of inquiry for public employment and other positions of trust. The law has historically allowed the government to place such positions off limits for those who have "violated the criminal laws[.]" *Hawker v. People of New York*, 170 U.S. 189, 191 (1898); *see NASA v. Nelson*, 562 U.S. 134, 152 (2011) ("Like any employer, the Government is entitled to have its projects staffed by reliable, law-abiding persons[.]")

While individual resources and efforts can help make private information less accessible, such efforts do not require the court to give more weight to the asserted privacy interest. Nor does the absence of such expenditures diminish the

inherently private character of an interest. After all, it would not be fair to the public or to other parties for the court to treat resources expended as a relevant measure of the intensity of someone's privacy interest in information.

*Second*, the Ohio court's sealing of the record of Dr. Doe's convictions does not materially alter the privacy balance in this case. To be sure, sealed cases "raise[] greater privacy concerns than the disclosure of information regarding public convictions[.]" *ACLU*, 655 F.3d at 17.

But not so here. Dr. Doe's sealing was based on an executive pardon. Applications for an executive pardon in Ohio are submitted to the Ohio parole board which must conduct and publish "a thorough investigation into the propriety of granting a pardon[.]" OHIO REV. CODE ANN. § 2967.07 (West 2025); *Reports*, OHIO DEP'T OF REHAB. & CORR., https://drc.ohio.gov/about/resource/reports/1-reports? keyword=clemency (last visited May 23, 2025).

The Ohio Constitution also mandates that all granted pardons be publicly reported to the Ohio legislature. OHIO CONST. ART. III, § 11 ("The Governor shall communicate to the general assembly, at every regular session, each * * * pardon granted, stating the name and crime of the convict, the sentence, its date, and the date of the * * * pardon[.]").

This means that, in addition to the public court proceeding underlying the convictions, the very process that enabled Dr. Doe to seal his records resulted in at least two more public processes and records publicly disclosing his felony convictions—one from the parole board and one from the Governor.

To be sure, these records may later have been sealed along with the underlying court records. But while Dr. Doe was seeking a court order sealing all records associated with his conviction, these new records were publicly available. At that time, information about Dr. Doe's convictions could have been accessed, preserved, or publicized by any member of the public. That, in fact, may have occurred in this case because the FDIC discovered Dr. Doe's criminal convictions using a "commercial investigative service." App. 11.

*Third*, Dr. Doe relies upon cases brought under the Freedom of Information Act that concern whether the government must disclose to FOIA requesters private information about other persons. *See Reporters Comm.*, 489 U.S. at 757; *ACLU*, 655 F.3d at 3-4. While FOIA cases help to elucidate Dr. Doe's privacy interest in his sealed criminal record, FOIA's relevance largely stops there.

Specifically, FOIA's statutory balancing of privacy and public interests is not the same as the historic presumption in favor of open and transparent judicial proceedings. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564-569 (1980) (tracing the presumption of open judicial proceedings back to the Middle Ages). After all, FOIA vindicates the public interest in understanding only the operations and activities of the Executive Branch, 5 U.S.C. § 552(a)(4)(A)(iii), and does so within the caveated and qualified disclosure requirements of the statute, 5 U.S.C. § 552(b) & (c).

In addition, while FOIA's purpose is to open Executive Branch operations to public view, that is a qualified and caveated goal. FOIA carefully balances the private and public interests implicated in a records request because disclosure is "not always in the public interest," *CIA v. Sims*, 471 U.S. 159, 167 (1985), when "private interests [can] be harmed," *FBI v.*

*Abramson*, 456 U.S. 615, 621 (1982). In fact, FOIA permits the government to withhold personnel files and other records of private information if disclosure "would" or "could" result in an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(6) & (7)(C). To overcome FOIA's privacy exception for law enforcement records, a FOIA requester generally must identify specific "misfeasance" by the executive branch and provide "credibl[e]" evidence of it. *National Archives & Records Administration v. Favish*, 541 U.S. 157, 173 (2004); *see also* 5 U.S.C. § 552a(b)(2) (prohibiting agencies from disclosing information about private citizens when a FOIA exemption applies).

As a result of FOIA's numerous exceptions to disclosure and privacy protections, the withholding of information from public view, in whole or in part, is common under FOIA. *See* DEPARTMENT OF JUSTICE, 2024 ANNUAL FOIA REPORT SUMMARY 9 (2025) (reporting that only 22.84% of requests led to records released in full).

By contrast, exceptions to openness in judicial proceedings are "rare." *Sealed Case II*, 971 F.3d at 328. Of course, FOIA and its protections against the disclosure of private citizens' information do not apply to the Judicial Branch at all. 5 U.S.C. § 552(f)(1). Instead, judicial proceedings traditionally start with a presumption of openness, transparency, and full disclosure of party filings and, unlike FOIA, 5 U.S.C. § 552(b) & (c), there is no long list of exceptions. The public's historic and presumptive right to monitor whether federal courts are doing justice between parties, and how parties are using the courts to vindicate their own interests, have led courts to enforce across-the-board rules of disclosure concerning the parties' filings, including the parties' identities and facts about them that are salient to the resolution of their case. Only limited exceptions are allowed.

As a result, at both the starting and ending points, the judicial rules of public transparency and disclosure are far less yielding than the qualified disclosure scheme Congress created with FOIA.

In sum, although Dr. Doe has some legitimate privacy interest in his thirty-two-year-old felony convictions, and their sealed status somewhat increases the weight of that interest, he has not shown that his interest in confidentiality qualifies as the type of compelling, sensitive, and highly personal privacy interest that would tilt the first factor in his favor.[2]

**B**

Dr. Doe also objects to the district court's assessment of the fourth factor, which *Sealed Case I* described as "whether the action is against a governmental or private party[.]" *Sealed Case I*, 931 F.3d at 97 (citation omitted). According to Dr. Doe, the district court turned factor four into a catch-22 by using a test that weighs factor four against pseudonymity both when the suit is against a private party and when it is against the government. Relying on the Fifth Circuit's decision in *Southern Methodist University Association of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979), Dr. Doe argues that factor four is concerned exclusively with reciprocal risk to reputation. In *Wynne & Jaffe*, the Fifth

---

[2] In reaching our conclusion, we need not (and so do not) decide that information in sealed criminal records is always insufficient for factor one to favor pseudonymity. For example, substantially different considerations could be at play if a record were sealed because of exoneration. The Supreme Court has indicated that there is a very strong privacy interest in criminal records where the individual's association with the record is due to "mere happenstance." *Favish*, 541 U.S. at 166.

Circuit held that when a private party sues another private party, it is unfair for one private party to have its reputation put at risk by having its name in the case caption while the other private party escapes reputational risk by proceeding under a pseudonym. 599 F.2d at 713. That concern does not apply when the government is a party, the court reasoned, because the government's reputation is unaffected by litigation. *Id.* In other words, according to Dr. Doe, factor four should always weigh in favor of pseudonymity when the other side is the government. Because the district court here held that factor four considers the public interest in the litigation and therefore disfavors pseudonymity in this lawsuit against the government, Dr. Doe says that approach makes the factor always weigh against appearing under a pseudonym.

The catch-22 that Dr. Doe perceives is a product of his own misunderstanding of factor four's role. That consideration looks to the identity of the opposing party as a tool for measuring the public interest in transparent litigation. Reputational harm can be one relevant public interest because a lack of reputational reciprocity can create unfairness in litigation strategies, risks, and tactics.

But that is not the only relevant concern. The nature of the claim raised against a party can also affect the extent of the public interest in transparent litigation. *See generally Sealed Case II*, 971 F.3d at 329. For example, constitutional claims can only be pressed against a government or a close governmental affiliate, and yet they have much more far-reaching consequences for the public interest than most private litigation. On the other hand, class actions or private antitrust actions seeking broad or structural relief against private businesses could trigger a more significant interest in transparency than one person's claim for an individual monetary payment from the government.

In other words, factor four is not a binary factor that always tips one way or the other based on the identity of the non-moving party. Rather, depending on the nature of the claims raised and relief sought, the identity of a party can materially change the public interest in open and evenhandedly transparent litigation.

The particular claims pressed by Dr. Doe against the government are at the apex of public interest in litigation in two respects.

*First*, Dr. Doe asks this court to invalidate as facially unconstitutional a provision of federal law—the statutory provision prohibiting the FDIC from hiring persons with felony records, 12 U.S.C. § 1822(f)(4)(E)(i). Declaring unconstitutional a statutory provision duly enacted by both Houses of Congress and signed into law by the President is the "gravest" ruling a court can issue. *United States v. Nassif*, 97 F.4th 968, 974 (D.C. Cir.), *cert. denied*, 145 S. Ct. 552 (2024) (quoting *Hodge v. Talkin*, 799 F.3d 1145, 1157 (D.C. Cir. 2015)). That is because such facial challenges invalidate laws across the board no matter to whom they are applied. *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008). In so doing, facial challenges "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* at 451. Given the far-reaching consequences of the relief Dr. Doe seeks, the public interest in understanding the genesis and generator of the litigation is great.

*Second*, Dr. Doe also brings an as-applied constitutional challenge arguing that, at a minimum, the law is unconstitutional as applied to the facts of his case. *See*

*Gonzales v. Carhart*, 550 U.S. 124, 167 (2007) (explaining that as-applied challenges consider the specific context of the plaintiff's claim). The very nature of such a claim, however, turns upon individualized factors and information about Dr. Doe's circumstances and relevant characteristics. And that could well include Dr. Doe's identity in a case like this that seeks to invalidate a law *because it seeks information about the individual*. In other words, information about the plaintiff's identity and his trustworthiness notwithstanding his felony convictions sits at the heart of Dr. Doe's as-applied constitutional challenge.

Critically, the statutory provision that Dr. Doe seeks to invalidate is one that protects the operation and integrity of the Nation's financial system by barring those convicted of a felony from working at the FDIC. 12 U.S.C. § 1822(f)(4)(E)(i). A past conviction for violating the very laws that the FDIC enforces, for example, could present a very different as-applied constitutional question from a past conviction for a non-financial felony, like removing paleontological resources from federal land, 16 U.S.C. § 470aaa-5(a)(1), or transporting a lottery ticket across state lines, 18 U.S.C. § 1301. Even assuming (without deciding) that Congress could not proscribe hiring felons based on some circumstances, Congress might still appropriately forbid wolves from guarding the henhouse by banning those convicted of financial felonies from working at the FDIC. *Cf. FDIC v. Mallen*, 486 U.S. 230, 241 (1988) (holding there is a "significant" public interest in suspending "indicted bank officers"). Tellingly, even under the law governing Ohio's sealing of Dr. Doe's conviction record at the time he applied to the FDIC, Ohio employers could still consider his criminal record if it bore "a direct and substantial relationship to the position for which" he applied. OHIO REV. CODE ANN. § 2953.33(B)(1) (West 2022); *see generally Nelson*, 562 U.S.

at 152 (government may consider criminal history when making employment decisions); *Gilbert v. Homar*, 520 U.S. 924, 932 (1997) (holding there is a "significant interest in immediately suspending" an official "when felony charges are filed against them").

These considerations create a substantial public interest not only in the case, but also in the identity of the proponent of an as-applied claim and the circumstances surrounding his felony conduct. Those are the same factors that will provide the decisional basis for the court's constitutional ruling, and shielding those critical factors from public view will reduce transparency in a case of public consequence and will make it more difficult for the public to understand and to trust the court's ruling.

Dr. Doe argues that applying factor four in this way will chill litigants from suing the government for constitutional violations. That argument overlooks the peculiar nature of Dr. Doe's constitutional challenge to a law about employees' trustworthiness. The argument also forgets that the fourth factor is just one of five non-exclusive considerations for courts to weigh in deciding whether pseudonymity is warranted. *See Sealed Case I*, 931 F.3d at 97; *Sealed Case II*, 971 F.3d at 326-327. The problem for Dr. Doe is that so few of those factors favor pseudonymity in his case—including the diminished nature of his privacy interest—and he has not identified other relevant factors the district court should have, but did not, include in its analysis.

Dr. Doe's argument also fails to accord any meaningful weight to the public interest and its presumptive right to transparent judicial proceedings in cases of far-reaching public consequence. A byproduct of government transparency is that those who seek to alter public law by using the federal courts

must, in all but truly exceptional cases, reveal their identity so that the public can understand the issues before the court, the consequences of the court's ruling, and the manner in which the court reached its decision. After all, secrecy in court proceedings was one of the evils of concern at the Founding. *See* Federal Farmer, Letter XV (Jan. 18, 1788), *reprinted in* 2 THE COMPLETE ANTI-FEDERALIST 320 (Herbert Storing ed. 1981) (decrying "secret and arbitrary proceedings" and extolling public trials as "the means by which the people are let into the knowledge of public affairs—are enabled to stand as the guardians of each others' rights, and to restrain, by regular and legal measures, those who otherwise might infringe upon them").

\* \* \* \* \*

In sum, the district court did not abuse its discretion in weighing the relevant factors and then denying Dr. Doe's motion to proceed under a pseudonym. Although the government challenges the district court's analysis of factor two (risk of harm), this court need not address that argument given our denial of Dr. Doe's appeal.

**IV**

For the foregoing reasons, the judgment of the district court denying Dr. Doe's motion to proceed under a pseudonym is affirmed.

*So ordered.*